SELMA RAPPAPORT, *ETC.*, PLAINTIFF-APPELLANT, v. ROBERT NICHOLS, *ET AL.*, DEFENDANTS, AND HUB BAR, INC., A NEW JERSEY CORPORATION, *ET AL.*, DEFENDANTS-RESPONDENTS.

Argued October 14, 1959—Decided November 23, 1959.

*Mr. Seymour B. Jacobs* argued the cause for the plaintiff-appellant (*Mr. Fred Freeman,* attorney).

*Mr. Sheldon Schachter* argued the cause for the defendants-respondents (*Mr. Joseph A. D'Alessio,* attorney for defendants-respondents Nathan Sweet and Solomon Lustig, t/a Nate's Tavern; *Mr. Leon Sachs,* attorney for defendant-respondent Hub Bar, Inc.; *Mr. Morris Barr,* attorney for defendant-respondent Murphy's Tavern, Inc.).

The opinion of the court was delivered by

JACOBS, J. The plaintiff-appellant appealed to the Appellate Division from a judgment entered in the Law Division in favor of the defendants-respondents. We certified the matter on our own motion.

The plaintiff's complaint alleges that during the night of November 14 or the early morning of November 15, 1957 Robert Nichols, who was then about 18 years of age, was "wrongfully and negligently sold and served alcoholic beverages" at the tavern premises of the defendants Hub Bar, Inc., 146 Mulberry Street, Newark, Murphy's Tavern, Inc., 135 Mulberry Street, Newark, Nathan Sweet and Solomon Lustig, trading as Nate's Tavern, 116 Mulberry Street, Newark and El Morocco Cocktail Bar, Inc., 1011 Broad Street, Newark; that the alcoholic beverages were sold and served under circumstances which constituted "notice or knowledge" by the tavern operators that Nichols was a minor who could not lawfully be served by them; that during his visits to Murphy's Tavern and the El Morocco Cocktail Bar, Nichols was accompanied by the defendant Leonard Britton, an adult, who paid for the alcoholic beverages under circumstances which constituted notice or knowledge that Nichols should not be served because of "his age and apparent condition"; that by reason of the "negligence and wrongful conduct" of the defendants, Nichols was rendered "under the influence of alcoholic beverages and unfit and incompetent to safely and reasonably operate" the motor vehicle entrusted to him by his mother, the defendant Mary Nichols; that he nevertheless drove it along the public highway at Washington and Academy Streets in Newark in a careless manner, resulting in a collision with a car operated by Arthur Rappaport and owned by the plaintiff; that Arthur Rappaport died as the result of injuries received in the collision and the plaintiff was appointed as general administratrix and administratrix *ad prosequendum* and seeks damages as the representative of his estate and in her individual capacity as owner of the car. Upon the basis of the limited record before us we may, for present purposes, infer that Nichols had just attained his eighteenth birthday, that he was served with intoxicating beverages at each of the four named taverns, that he left the last of the taverns at about 2 A. M., that he was intoxicated and negligently drove the motor vehicle

and collided with the plaintiff's car between 2:15 and 2:20 A. M., and that his negligent operation of the motor vehicle was the result of his intoxication.

The tavern operators moved for summary judgment on the ground that the complaint "fails to state a cause of action and that as a matter of law" they are entitled to judgment. On March 20, 1959 the Law Division judge granted the motion in a letter opinion which stated that "while in some other jurisdictions outside New Jersey one may be held responsible for the actions of another to whom he has served intoxicating liquors, such is not the present law in New Jersey and to apply the doctrine of foreseeability to the facts in the case would stretch the intent of the doctrine too far." On April 20, 1959 a formal order for summary judgment was entered; it contained a provision staying proceedings against the remaining defendants until the plaintiff's rights are finally determined on appeal as against the tavern keepers. *Cf. R. R.* 4:55–2. Notice of appeal was filed by the plaintiff and her supporting brief as well as the brief in opposition by the tavern keepers addresses itself entirely to the issue of whether the plaintiff's complaint against the tavern keepers sets forth a common law cause of action grounded on negligence. We shall do the same, bearing in mind that in dealing with the legal sufficiency of the complaint, the plaintiff is entitled to a liberal interpretation of its contents and to the benefits of all of its allegations and the most favorable inferences which may be reasonably drawn from them. See *Puccio v. Cuthbertson,* 21 *N. J. Super.* 544, 548 (*App. Div.* 1952); *Mianulli v. Gunagan,* 32 *N. J. Super.* 212, 215 (*App. Div.* 1954); *Di Cristofaro v. Laurel Grove Memorial Park,* 43 *N. J. Super.* 244, 248 (*App. Div.* 1957). At oral argument, counsel for the plaintiff indicated that the complaint was intended to charge not only that the tavern keepers unlawfully and negligently sold and served alcoholic beverages to Nichols under circumstances which constituted notice or knowledge that he was a minor but also that the sale and

service by one or more of the tavern keepers was at a time when Nichols' intoxicated condition was apparent. Despite its vague phraseology we shall assume that the complaint embodies such charge; in any event an amendment to that end would readily be allowed. See *Schierstead v. City of Brigantine,* 29 *N. J.* 220, 234 (1959).

Judges elsewhere have dealt with the issue of whether tavern keepers who unlawfully sell alcoholic beverages to persons who are already intoxicated or to minors who become intoxicated may properly be subjected to common law claims grounded on negligence where the intoxicated persons leave the taverns, carelessly drive their cars and injure others. Most of them, while acknowledging the justness of the common law principles which generally result in the imposition of liability for negligent conduct which causes injury to others, have rejected such claims. See *Fleckner v. Dionne,* 94 *Cal. App. 2d* 246, 210 *P. 2d* 530 (*Dist. Ct. App.* 1949); *State for Use of Joyce v. Hatfield,* 197 *Md.* 249, 78 *A. 2d* 754 (*Ct. App.* 1951); *Cowman v. Hansen,* 92 *N. W. 2d* 682 (*Iowa Sup. Ct.* 1958); 30 *Am. Jur. Intoxicating Liquors* § 520 (1958); *Annotation,* 130 *A. L. R.* 352 (1941); *cf. Cole v. Rush,* 45 *Cal. 2d* 345, 289 *P. 2d* 450, 54 *A. L. R. 2d* 1137 (*Sup. Ct.* 1955). In the *Fleckner* case a divided court sustained the dismissal of a count in the complaint which charged that the defendant tavern keeper had unlawfully and negligently sold liquor to a minor while he was actually intoxicated and that the plaintiffs were injured when the minor left the tavern, negligently drove his car while intoxicated and collided with the plaintiffs' car causing their injuries. The majority took the position that the sale of the liquor was not the "proximate cause" of the plaintiffs' injuries and cited earlier cases which sought to separate and insulate the selling of the liquor from its consumption, suggesting that the latter and not the former was the proximate cause. In his dissenting opinion, Justice Dooling indicated that he was not at all impressed by this highly legalistic type of reasoning; he considered that the plaintiffs' claim

came well within fundamental common law negligence principles which are recognized in his state as well as elsewhere throughout the country; and he placed analogical reliance on the many decisions which impose common law liability on car owners who negligently loan their cars to intoxicated persons who then negligently injure innocent third parties. See *Deck v. Sherlock,* 162 *Neb.* 86, 75 *N. W. 2d* 99 (*Sup. Ct.* 1956); *Mitchell v. Churches,* 119 *Wash.* 547, 206 *P.* 6, 36 *A. L. R.* 1132 (*Sup. Ct.* 1922).

In *State for Use of Joyce v. Halfield, supra,* the court sustained a dismissal of a common law claim against the defendant tavern keeper on the ground that, as a matter of law, the sale to the intoxicated minor could not be considered the proximate cause of the later collision; the court stressed the fact that while many other states had done so, Maryland had never adopted a so-called Civil Damage Law or Dram Shop Act imposing strict liability upon tavern keepers for injuries resulting from sales of alcoholic beverages. See *Appleman, "Civil Liability under Illinois Dramshop Act,"* 34 *Ill. L. Rev.* 30 (1939); *Note, "Liability under the New York Dram Shop Act,"* 8 *Syracuse L. Rev.* 252 (1957). In *Cowman v. Hansen, supra,* the Iowa Supreme Court rejected the plaintiff's common law claim on the ground that the sale of the alcoholic beverage was "too remote" to be considered the proximate cause of the injury; in the course of its opinion it discussed *Pratt v. Daly,* 55 *Ariz.* 535, 104 *P. 2d* 147, 130 *A. L. R.* 341 (*Sup. Ct.* 1940) where the court, citing many supporting cases involving habit forming drugs, held that a wife could properly assert a common law negligence claim against a tavern keeper for the loss resulting to her from the tavern keeper's continued service of alcoholic beverages to her husband, an habitual drunkard. See *Moberg v. Scott,* 38 *S. D.* 422, 161 *N. W.* 998, *L. R. A.* 1917D, 732 (*Sup. Ct.* 1917); cf. *Nally v. Blandford,* 291 *S. W. 2d* 832 (*Ky. Ct. App.* 1956); *Riden v. Gremm,* 97 *Tenn.* 220, 36 *S. W.* 1097, 35 *L. R. A.* 587 (*Sup. Ct.* 1896); *Dunlap v. Wagner,* 85 *Ind.* 529, 44 *Am.*

*Rep.* 42 (*Sup. Ct.* 1882); *Skinner v. Hughes,* 13 *Mo.* 440 (*Sup. Ct.* 1850). The Iowa court sought to distinguish *Pratt v. Daly,* on the rather unconvincing ground that while "it may be foreseen" or it may be "a natural result" of furnishing an alcoholic beverage to an intoxicated person "that he himself will get hurt" it is "not at all clear that he will naturally assault someone, drive a car and injure or kill another, or do some other tortious act." [92 *N. W. 2d* 686]

The reasoning in cases such as *Cowman v. Hansen, supra,* has in effect been rejected in decisions under Civil Damage Laws which have sustained findings that the ensuing collisions were the proximate consequences of the liquor sales. In *Manning v. Yokas,* 389 *Pa.* 136, 132 *A. 2d* 198 (*Sup. Ct.* 1957) the plaintiffs were injured when their car was struck by a car driven by Kordowski who was intoxicated. Kordowski was a minor and had been served alcoholic beverages at the defendant's premises. The plaintiffs claimed damages from the defendant under the Pennsylvania statute of 1854, Act May 8, 1854, P. L. 663, which provided, in part, that any person who wrongfully furnishes alcoholic beverages "to a minor" shall be held civilly responsible for any injuries "in consequence of such furnishing." The trial court, in setting aside a verdict by the jury for the plaintiffs, found that while the defendant's conduct was negligent, the later injury was not remediable under the statute; this finding was reversed by the Pennsylvania Supreme Court which had this to say:

"If a drunken minor staggered from a saloon and fell over a child, it could not be argued that his fall was not the consequence of the furnishing of the liquor. So far as liability is concerned, there can be no difference between an injury caused through one's falling body and an injury inflicted by one's automobile under his management and control. If an innkeeper plied a minor with whiskey to a degree that the minor became offensively aggressive and, while under the influence of the liquor, injured another with a knife, it could not be doubted that the innkeeper, under the Act of 1854, would be liable for those injuries. An automobile when handled recklessly by its driver can be a weapon no less damaging and no less fatal than a knife. That the negligent operation of the automobile by

Kordowski caused the accident is unquestioned in this appeal. But Kordowski's negligence was the result of his imbibing intoxicating liquor supplied by Yokas. Yokas thus, under the Act, became as much responsible for the accident as if he had stripped the gears of the car or had damaged the steering wheel, which defects in the operation of the car were directly responsible for the uncontrollability which caused the collision." (132 *A. 2d* at *pages* 199–200)

In *McKinney v. Foster,* 391 *Pa.* 221, 137 *A. 2d* 502 (*Sup. Ct.* 1958), the defendant wrongfully served beer to a minor who left the defendant's premises, drove his car while under the influence of intoxicants and ran into the decedent who was walking along the edge of the public highway. In an action brought by the decedent's administrator under the 1854 statute the jury found for the plaintiff but the trial court set aside its verdict and granted judgment for the defendant on the ground the defendant could not have foreseen that the minor would become intoxicated, drive an automobile and become involved in a fatal accident. In reversing the trial court's action, the Pennsylvania Supreme Court pointed out that implicit in its earlier holding in *Manning v. Yokas, supra,* was the common knowledge that great numbers of minors as well as adults drive automobiles "and that it was well within the realm of foreseeability that one illegally served with intoxicants might negligently drive an automobile and cause injury to persons or property."

Although the actions in *Manning v. Yokas, supra* and *McKinney v. Foster, supra,* were grounded on the Pennsylvania statute of 1854, a later Pennsylvania case rests entirely on common law principles. See *Schelin v. Goldberg,* 188 *Pa. Super.* 341, 146 *A. 2d* 648 (*Super. Ct.* 1958), leave to appeal denied by the Pennsylvania Supreme Court on February 27, 1959. There the plaintiff visited a series of taverns, the last of which was operated by the defendant. Although visibly intoxicated he was served alcoholic beverages in the defendant's taproom. While leaving the taproom the plaintiff was assaulted by another patron whom he had apparently offended; he sued the defendant and received a favorable verdict from the jury. The 1854 statute had been repealed

before the assault but the court nevertheless held that the plaintiff could maintain his action on principles of negligence. In directing the entry of judgment for the plaintiff on the jury's verdict, the Pennsylvania Superior .Court, in an opinion by Judge Woodside, expressed the view that the defendant's unlawful sale of alcoholic beverages to the plaintiff while he was intoxicated constituted common law negligence and that the defendant could be held liable for the proximate consequences of his negligence including the assault on the plaintiff by the other patron. *Cf. Reilly v. 180 Club, Inc.,* 14 *N. J. Super.* 420 (*App. Div.* 1951).

In *Waynick v. Chicago's Last Department Store,* 269 *F. 2d* 322 (7 *Cir.* 1959), the complaint charged that the defendants had· unlawfully sold alcoholic beverages in Illinois to Sims and Owens while they were intoxicated and that Sims, the owner, and Owens, the driver, then took their car to Michigan where they were in a collision which caused the death and injuries described in the plaintiffs' complaint. The court assumed that the Dram Shop Acts of Illinois and Michigan were inapplicable but sustained the complaint as properly setting forth a common law action grounded on negligence. In the course of his opinion, Circuit Judge Schmackenberg first referred to the fundamental common law principles which generally result in the imposition of liability on those whose negligent acts cause injury to others and to the broad public purposes of the statutory prohibition against the sale of alcoholic beverages to intoxicated persons; he then said:

"In applying the common law to the situation presented in this case, we must consider the law of tort liability, even though the chain of events, which started when the defendant tavern keepers unlawfully sold intoxicating liquor to two drunken men, crossed state boundary lines and culminated in the tragic collision in Michigan. We hold that, under the facts appearing in the complaint, the tavern keepers are liable in tort for the damages and injuries sustained by plaintiffs, as a proximate result of the unlawful acts of the former." (269 *F. 2d* at *page* 326)

The result in *Waynick* finds support in many comparable situations where the courts have imposed liability on persons whose unlawful and negligent conduct contributed with the negligent conduct of other tortfeasors in injuring innocent third parties. In *Anderson v. Sellergren,* 100 *Minn.* 294, 111 *N. W.* 279 *(Sup. Ct.* 1907), the defendant unlawfully sold cartridges and loaned a .22 caliber rifle to a minor who negligently fired the rifle and injured the plaintiff; in sustaining a common law complaint by the plaintiff grounded on negligence, the Minnesota Supreme Court pointed out that the statute which prohibited the possession of firearms by minors was for the benefit of members of the public generally as well as the minors themselves and that the firing of the gun by the minor did not constitute an efficient intervening cause which broke the legal chain of causation. Similarly in *Semeniuk v. Chentis,* 1 *Ill. App.* 2d 508, 117 *N. E.* 2d 883 ·(*App. Ct.* 1954), the defendant sold an air rifle for use by a child who negligently fired it, injuring the plaintiff. The plaintiff filed a complaint sounding in negligence and charging that the sale was in violation of a local ordinance and that the defendant knew that the child was inexperienced and lacking in judgment and discretion and would probably injure some member of the public; in sustaining the complaint, the court rejected the defendant's contentions that the sale of the rifle was not the proximate cause of the injury and that the child's intervening act in firing the rifle was a superseding cause. See *Mazzilli v. Selger,* 13 *N. J.* 296 (1953), c.c. *Mazzilli v. Accident & Casualty Ins. Co., etc.,* 26 *N. J.* 307 (1958); *Driesse v. Verblaauw,* 9 *N. J. Misc.* 173 (*Sup. Ct.* 1931); cf. *Dixon v. Bell,* 5 *M & S* 198, 105 *Eng. Rep.* 1023 (*K. B.* 1816); *Yachuk v. Oliver Blais Co.* [1949] *A. C.* 386, 2 *All Eng. Rep.* 150, 20 *A. L. R.* 2d 111 (*H. L.* 1949); *Zamora v. J. Korber & Co.,* 59 *N. M.* 33, 278 *P.* 2d 569 (*Sup. Ct.* 1955).

In *Ney v. Yellow Cab Company,* 2 *Ill.* 2d 74, 117 *N. E.* 2d 74, 76, 51 *A. L. R.* 2d 624 (*Sup. Ct.* 1954), the defendant left his taxicab unattended with the key in the ignition

lock in violation of a statute. It was stolen and while being operated by the thief it struck the plaintiff's car. The plaintiff filed a complaint grounded on negligence and the defendant contended that his conduct was neither negligent nor the proximate cause of the injury. In sustaining the complaint the court took the position that the statute was "a public safety measure," that its violation was *"prima facie* evidence of negligence," that if the intervention of the theft might reasonably have been foreseen it would not break the chain of causation (see *Brower v. New York Cent. & H. R. R. Co.,* 91 *N. J. L.* 190, 193 *(E. & A.* 1918)) and that it could not be said, as a matter of law, that the negligent act was not the proximate cause of the injury suffered by the plaintiff. Similarly in *Ross v. Hartman,* 78 *U. S. App. D. C.* 217, 139 *F. 2d* 14, 158 *A. L. R.* 1370 *(C. A. D. C.* 1943), *certiorari* denied 321 *U. S.* 790, 64 *S. Ct.* 790, 88 *L. Ed.* 1080 (1944), the court reversed a lower court finding that a plaintiff could not maintain a common law negligence action against a defendant whose truck had been stolen and had injured the plaintiff while it was being driven by the thief. The truck had been left unlocked and unattended with the key in the ignition in violation of an ordinance of the District of Columbia. See *Kinsley v. Von Atzingen,* 20 *N. J. Super.* 378, 381 *(App. Div.* 1952). The court expressed the view that the ordinance was a safety measure and that its violation constituted negligence which proximately resulted in the harm to the plaintiff; in practical support of its determination it pointed out that the defendant had created the risk and that it was "fairer to hold him responsible for the harm than to deny a remedy to the innocent victim."

██ During prohibition days, New Jersey had a Civil Damage Law which imposed strict liability for compensatory and punitive damages upon unlawful sellers of alcoholic beverages. See *L.* 1921, *c.* 103, *p.* 184; *L.* 1922, *c.* 257, *p.* 628. The law was repealed in 1934 *(L.* 1934, *c.* 32, *p.* 104) along with other miscellaneous liquor enactments in the light

of the abandonment of prohibition and its replacement by the Alcoholic Beverage Control Act. *L.* 1933, *c.* 436, *p.* 1180; *R. S.* 33 :1–1 *et seq.* The repealer left unimpaired the fundamental negligence principles which admittedly prevail in New Jersey and upon which the plaintiff grounds his common law claim. See *Schelin v. Goldberg, supra; cf. Evers v. Davis,* 86 *N. J. L.* 196 (*E. & A.* 1914); 1 *Sutherland, Statutory Construction* § 2043 (*3d ed.* 1943). Negligence is tested by whether the reasonably prudent person at the time and place should recognize and foresee an unreasonable risk or likelihood of harm or danger to others. See Gaulkin, J. in *Schaublin v. Leber,* 50 *N. J. Super.* 506, 510 (*App. Div.* 1958); *cf. Martin v. Bengue, Inc.,* 25 *N. J.* 359, 371 (1957); *Harpell v. Public Service Coordinated Transport,* 20 *N. J.* 309, 316 (1956); *Bohn v. Hudson & Manhattan R. Co.,* 16 *N. J.* 180, 186 (1954). And, correspondingly, the standard of care is the conduct of the reasonable person of ordinary prudence under the circumstances. See *Ambrose v. Cyphers,* 29 *N. J.* 138, 144 (1959).

The negligence may consist in the creation of a situation which involves unreasonable risk because of the expectable action of another. See *Brody v. Albert Lifson & Sons,* 17 *N. J.* 383, 389 (1955). Where a tavern keeper sells alcoholic beverages to a person who is visibly intoxicated or to a person he knows or should know from the circumstances to be a minor, he ought to recognize and foresee the unreasonable risk of harm to others through action of the intoxicated person or the minor. The Legislature has in explicit terms prohibited sales to minors as a class because it recognizes their very special susceptibilities and the intensification of the otherwise inherent dangers when persons lacking in maturity and responsibility partake of alcoholic beverages; insofar as minors are concerned the sale of the first drink which does "its share of the work" (*Taylor v. Wright,* 126 *Pa.* 617, 621, 17 *A.* 677, 678 (1889)) and which generally leads to the others is unequivocally forbidden. See *R. S.* 33 :1–77. In furtherance of the legislative policy,

the Division of Alcoholic Beverage Control has by its Regulation No. 20, Rule 1, provided that no licensee shall permit any minor to be served or consume any alcoholic beverages; and the same regulation contains a provision against service to or consumption by any person "actually or apparently intoxicated." It seems clear to us that these broadly expressed restrictions were not narrowly intended to benefit the minors and intoxicated persons alone but were wisely intended for the protection of members of the general public as well. See *State v. Dahnke*, 244 *Iowa* 599, 603, 57 *N. W. 2d* 553, 556 (*Sup. Ct.* 1953); *Waynick v. Chicago's Last Department Store, supra,* 269 *F. 2d* at *page* 325; *cf. Essex Holding Corp. v. Hock,* 136 *N. J. L.* 28 (*Sup. Ct.* 1947); *Sportsman 300 v. Board of Com'rs of Town of Nutley,* 42 *N. J. Super.* 488 (*App. Div.* 1956).

When alcoholic beverages are sold by a tavern keeper to a minor or to an intoxicated person, the unreasonable risk of harm not only to the minor or the intoxicated person but also to members of the traveling public may readily be recognized and foreseen; this is particularly evident in current times when traveling by car to and from the tavern is so commonplace and accidents resulting from drinking are so frequent. See *National Safety Council, Accident Facts, p.* 49 (1959 *ed.*); *cf. Resume of Annual Reports of the Chief Medical Examiner of the County of Middlesex, State of New Jersey* (1933–1958), *p.* 9 (1959); *Study No. 885.A13, Minnesota Department of Highways, The Relationship of Drinking & Speeding to Accident Severity, p.* 5 (1959). If the patron is a minor or is intoxicated when served, the tavern keeper's sale to him is unlawful; and if the circumstances are such that the tavern keeper knows or should know that the patron is a minor or is intoxicated, his service to him may also constitute common law negligence. In view of the standard of conduct prescribed by the statute and the regulations, a tavern keeper's sale of alcoholic beverages when he knows or should know that the patron is a minor or intoxicated may readily be

found by the jury to be imprudent conduct. While the plaintiff here may introduce evidence that the defendants knew or should have known that Nichols was a minor, or intoxicated when served, and may avail herself of the violations of the statute and the regulations as evidence of the defendants' negligence, each of the defendants is at liberty to assert that it did not know or have reason to believe that its patron was a minor, or intoxicated when served, and that it acted as a reasonably prudent person would have acted at the time and under the circumstances. See *Evers v. Davis, supra;* cf. *Carlo v. Okonite-Callender Cable Co.,* 3 N. J. 253, 264 (1949); *Moore's Trucking Co. v. Gulf Tire & Supply Co.,* 18 N. J. Super. 467, 472 *(App. Div.* 1952), certification denied 10 N. J. 22 (1952).

The defendants contend that, assuming their conduct was unlawful and negligent as charged in the complaint, it was nevertheless not the proximate cause of the injuries suffered. But a tortfeasor is generally held answerable for the injuries which result in the ordinary course of events from his negligence and it is generally sufficient if his negligent conduct was a substantial factor in bringing about the injuries. See Francis, J. in *Lutz v. Westwood Transportation Co.,* 31 N. J. Super. 285, 289 *(App. Div.* 1954), certification denied 16 N. J. 205 (1954); cf. *Hartman v. City of Brigantine,* 42 N. J. Super. 247, 261 *(App. Div.* 1956), affirmed 23 N. J. 530 (1957); *Melone v. Jersey Central Power & Light Co.,* 30 N. J. Super. 95, 105 *(App. Div.* 1954), affirmed 18 N. J. 163 (1955). The fact that there were also intervening causes which were foreseeable or were normal incidents of the risk created would not relieve the tortfeasor of liability. See *Prosser, Torts* § 49 *(2d ed.* 1955); cf. *Menth v. Breeze Corporation, Inc.,* 4 N. J. 428, 442 (1950); *Andreoli v. Natural Gas Company,* 57 N. J. Super. 356, 366 *(App. Div.* 1959). Ordinarily these questions of proximate and intervening cause are left to the jury for its factual determination. See *Martin v. Bengue, Inc., supra,* 25 N. J. at *page* 374; *Brower v. New York Cent.*

& H. R. R. Co., supra, 91 N. J. L. at page 191. If, as we must assume at this stage of the proceeding, the defendant tavern keepers unlawfully and negligently sold alcoholic beverages to Nichols causing his intoxication, which in turn caused or contributed to his negligent operation of the motor vehicle at the time of the fatal accident, then a jury could reasonably find that the plaintiff's injuries resulted in the ordinary course of events from the defendants' negligence and that such negligence was, in fact, a substantial factor in bringing them about. And a jury could also reasonably find that Nichols' negligent operation of his motor vehicle after leaving the defendants' taverns was a normal incident of the risk they created, or an event which they could reasonably have foreseen, and that consequently there was no effective breach in the chain of causation. In the light of the foregoing, we are in no position to hold that as a matter of law there could have been no proximate causal relation between the defendants' unlawful and negligent conduct and the plaintiff's injuries. See *Menth v. Breeze Corporation, Inc., supra; Martin v. Bengue, Inc., supra; Andreoli v. Natural Gas Company, supra.*

In the *Menth* case, *supra,* the plaintiffs alleged that the defendant had negligently stored combustible materials in a shed and that the materials had become ignited and had burned the plaintiffs' household furnishings in a nearby apartment house; this court held that the questions of negligence and proximate cause were for the jury and in answer to the contention that there may have been an intervening cause which had ignited the materials, it had this to say:

"There may be any number of causes and effects intervening between the first wrongful act and the final injurious occurrence and if they are such as might, with reasonable diligence, have been foreseen, the last result as well as the first, and every intermediate result, is to be considered in law as the proximate result of the first wrongful cause. A tort-feasor is not relieved from liability for his negligence by the intervention of the acts of third persons, including the act of a child, if those acts were reasonably foreseeable. The theory

being that the original negligence continues and operates contemporaneously with an intervening act which might reasonably have been anticipated so that the negligence can be regarded as a concurrent cause of the injury inflicted. One who negligently creates a dangerous condition cannot escape liability for the natural and probable consequences thereof although the act of a third person may have contributed to the final result. The law of negligence recognizes that there may be two or more concurrent and directly cooperative and efficient proximate causes of an injury. *Davenport v. McClellan*, 88 *N. J. L.* 653 (*E. & A.* 1915) ; *Daniel v. Gielty Trucking Co.*, 116 *N. J. L.* 172 (*E. & A.* 1935) ; 38 *Am. Jur. (Negligence)*, § 63, *p.* 715; *Ibid.*, § 70, *pp.* 726–727." (4 *N. J.* at *pages* 441–442)

 Although it is evident that the strict civil liability prevailing by statute in many of the states is a much heavier responsibility, the defendants urge that the sustaining of the plaintiff's complaint will place an "inconceivable" burden on them. We are fully mindful that policy considerations and the balancing of the conflicting interests are the truly vital factors in the molding and application of the common law principles of negligence and proximate causation. But we are convinced that recognition of the plaintiff's claim will afford a fairer measure of justice to innocent third parties whose injuries are brought about by the unlawful and negligent sale of alcoholic beverages to minors and intoxicated persons, will strengthen and give greater force to the enlightened statutory and regulatory precautions against such sales and their frightening consequences, and will not place any unjustifiable burdens upon defendants who can always discharge their civil responsibilities by the exercise of due care. It must be borne in mind that the plaintiff's complaint has no relation to service by persons not engaged in the liquor business or to lawful sales and service by liquor licensees, or to sales by reasonably prudent licensees who do not know or have reason to believe that the patron is a minor or is intoxicated when served; the allegations of the complaint are expressly confined to tavern keepers' sales and service which are unlawful and negligent. Liquor licensees, who operate their businesses by way of privilege rather than

as of right, have long been under strict obligation not to serve minors and intoxicated persons and if, as is likely, the result we have reached in the conscientious exercise of our traditional judicial function substantially increases their diligence in honoring that obligation then the public interest will indeed be very well served.

The judgment entered in the Law Division is reversed and the cause is remanded for trial.

*For affirmance*—None.

*For reversal*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.