[No. 2227-1.   Division One.   May 20, 1974.]

LINDA MARIE OAKES MARTIN et al., Appellants, v. HERBERT W. HUSTON et al., Respondents.

*Mathew D. Griffin,* for appellants.

*Bell, Ingram, Johnson & Level* and *Richard B. Johnson,* for respondents.

HOROWITZ, J.—Plaintiffs Martin appeal a judgment in a personal injury case in favor of defendants Huston. Unless otherwise stated, later reference to plaintiff means Linda Marie Oakes Martin.

The facts as the jury could have found them are these. Two cars were involved in a collision on December 25, 1971, while the cars were driving south in the right-hand lane of the 6-lane highway from Marysville, Washington. It was snowing at the time and there was ice and snow on the highway. Plaintiff driver was the sole occupant of her car. Defendant husband (Huston) was driving in the middle lane adjoining the plaintiff's right-hand lane, his wife occupying the front passenger seat. His daughter and son-in-law, Lawrence W. Royce, were seated in the back seat of the car.

Some distance south of the Pacific Avenue on-ramp, a car was traveling south in the lane to the left immediately

adjoining defendants' lane. As that car sped by, it splashed slush onto Huston's windshield. Because of wiper trouble and the need to clean the splashed-on windshield, Huston decided to change to the right lane, possibly intending, if necessary, to park on the right shoulder of the highway so that he could safely wipe his windshield. Huston asked Royce and his daughter whether it was safe to change lanes. Royce looked out the back window, saw a pair of headlights about a city block behind, but saw no car in the immediate vicinity. He then told Huston it was safe to make the lane change. At the same time, Mrs. Huston rolled down the window on the passenger side, looked out and also observed headlights approximately a city block behind. She too told her husband it was safe to make the lane change. Huston then signaled by his turn indicator he was turning to the right. He then reduced his speed as he gradually changed to the right lane. According to the testimony, he traveled an estimated distance of about 250 feet for that purpose in about 4 seconds. He completed his lane change and drove on in plaintiff's lane in a generally southerly direction. Plaintiff's car then was approximately 200 feet behind him. Plaintiff's car overtook and struck the Huston car from behind by "a square bumper contact."

Plaintiffs later sued defendants for damages sustained in the collision. Defendants answered denying liability and affirmatively alleged plaintiff was contributorily negligent. On March 28, 1973, the jury returned a verdict for defendants. The court denied plaintiffs' motion for judgment notwithstanding the verdict and for a new trial. Plaintiffs appeal the judgment entered on the verdict.

Preliminarily, defendants move to strike plaintiffs-appellants' brief because filed in typewritten rather than in the printed form required by CAROA 42. The purpose of the motion is to obtain a dismissal of the appeal pursuant to the rule that an appeal will be dismissed when an appellant files no brief in its support. Cf. *Monroe v. Winn*, 16 Wn.2d 497, 133 P.2d 952 (1943).

A motion to dismiss an appeal for failure to comply with court rules is a matter in the court's discretion. CAROA 51, 52. *See Hamilton v. Kiona-Benton Irr. Dist.*, 44 Wn.2d 421, 268 P.2d 446 (1954). In the instant case, plaintiffs filed a typewritten brief pursuant to permission obtained by their counsel by ex parte order of the chief judge, the motion for such permission being supported by affidavit showing plaintiffs' financial inability to pay for a printed brief. Defendants argue in their respondents' brief that typewritten briefs are permitted only when a party proceeds in forma pauperis (CAROA 42(b)); that according to defendants' "information and belief," plaintiffs' attorney had been retained upon a contingent fee basis; that there was no showing in plaintiffs' attorney's supporting affidavit that he did not have the funds necessary to print plaintiffs' brief. He cites *Boyle v. Great N. Ry.*, 63 F. 539 (Cir. Ct. D. Wash. 1894).

Assuming arguendo the argument based on "information and belief" has merit, it does not follow the appeal should be dismissed. Had defendants promptly moved to vacate the order of the chief judge as improvidently entered and to strike the brief on the ground now urged, the court would have had an opportunity to grant appropriate relief without depriving plaintiffs of an opportunity to present this appeal. Defendants, however, have waited to present their motion until they filed an answering brief on the merits, followed by oral argument on appeal. In passing upon this motion, interposed for the purpose of obtaining a dismissal of this appeal, we may properly consider the untimeliness and ultimate purpose of the motion, the prejudice plaintiffs would sustain should it be granted, and the lack of prejudice to defendants resulting from the typewritten form of appellants' brief. Defendants have made no showing they have been prejudiced and the motion is denied. *See Marr v. Cook*, 51 Wn.2d 338, 318 P.2d 613 (1957); *Rettinger v. Bresnahan*, 42 Wn.2d 631, 257 P.2d 633 (1953).

Plaintiffs contend instruction No. 13 is unsupported by substantial evidence. The instruction reads:

A statute provides that a driver shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of the vehicles and the traffic upon and the condition of the street or highway.

Where one vehicle is following another vehicle, the primary duty of avoiding a collision rests upon the following driver. In the absence of an emergency or unusual condition, he is negligent if he runs into the car ahead. However, the following driver is not necessarily excused even in the event of an emergency, for it is his duty to keep such observation of that car that he can make such emergency stop as may be required by reasonably foreseeable traffic conditions.

Plaintiffs argue the instruction is inapplicable to the facts because the Huston car suddenly turned in front of plaintiff's car leaving plaintiff with insufficient time and distance as a matter of law to avoid hitting the Huston car. *Grapp v. Peterson,* 25 Wn.2d 44, 168 P.2d 400 (1946). *See Hester v. Watson,* 74 Wn.2d 924, 448 P.2d 320 (1968); *Petersavage v. Bock,* 72 Wn.2d 1, 431 P.2d 603 (1967).

■ If full effect is given to defendants' version of the case, substantial evidence supports the instruction. Both cars were proceeding south in their respective lanes. Plaintiff's car, when first seen, was about a block behind defendants' car. As plaintiff's car was proceeding south, its driver could have seen defendants' car ahead as it proceeded for a distance of about 250 feet to make a lane change. Plaintiff driver could then have seen defendants' car after it straightened out about 200 feet ahead in front of plaintiff's car then traveling in a southerly direction. The evidence also showed that, at impact, defendants' car was proceeding at about 30 to 35 m.p.h., and plaintiff's car was traveling 30 to 35 m.p.h. faster than defendants' car. The jury had a right to find that, under all the circumstances, such a speed was unreasonably fast. *See Grapp v. Peterson, supra.* There is also evidence plaintiff driver did not look or

see defendants' car before colliding with it. It was a jury question whether, under the circumstances involved, Huston's conduct, considering the time and distance factors reviewed, changed his status from a disfavored driver making a lane change to a favored driver, after completing that change, entitled to the benefits of the following car doctrine. *See* 2 D. Blashfield, *Automobile Law & Practice* § 113.19 (3d ed. 1965).

█ If plaintiffs were dissatisfied with the challenged instruction because it failed to describe sufficiently the circumstances under which the following car doctrine did not apply, it was plaintiffs' duty to propose an appropriate instruction thereon and to take exception to the failure of the court to give that instruction. Plaintiffs did not do so and cannot now complain. *See Roumel v. Fude*, 62 Wn.2d 397, 400-401, 383 P.2d 283 (1963); *State v. Mayner*, 4 Wn. App. 549, 483 P.2d 151 (1971).

Plaintiffs contend the court erred in receiving opinion testimony from Charles Vernon Smith—an engineer and automobile accident reconstruction expert—who testified the speed differential between plaintiff's and defendants' cars was 30 to 35 m.p.h. The court held the witness was qualified to express that opinion. The latter had first testified to impressive general qualifications based on both education and experience in automobile accident reconstruction cases. He had investigated at least 750 accidents at the request of either a plaintiff or defendant. He personally handled about two cases a week, or about 100 cases a year, for the purpose of determining automobile speeds. His 25-year-old laboratory had grown steadily over that period. The laboratory was engaged in "the hammer-and-tongs approach of materials testing and materials failure, corrosion, industrial problems, structure testing, commercial-industrial, water analysis, some product research and development work." He testified he did metal testing in the laboratory for tensile strength; a substantial amount of routine testing, destructive testing, crushing, structure tests, fractures and bending. He was familiar with controlled

crash studies and had observed training films on controlled experiments regarding vehicle crashes.

In the instant case, he had inspected the main frame of plaintiff's car after the engine had been removed, the radiator taken out, and the wheels likewise removed. He also examined two photographs of the damage sustained by plaintiff's car. He had not, however, examined defendants' car. He testified that the damage sustained by defendants' car was the result of a "square bumper contact and collapse of the fender . . ." He testified in substance, on the basis of his knowledge and experience in the accident reconstruction field and his inspection of plaintiff's car and the two photographs, he had an opinion "as to the speed at impact of [plaintiff's] vehicle . . . , the differentiation between that and the object struck." That speed differential, he stated, was "Approximately 35, 30 miles an hour . . . ," that is, "it was going 30 miles an hour faster than the object struck." This testimony meant that by adding the speed differential to the actual speed of defendants' car, the speed of plaintiff's car could have been 60 to 70 m.p.h.

In earlier Washington cases expert testimony of car speed was held inadmissible when all the facts were before the jury from which the jury could make its own determination. In 5 Meisenholder, Wash. Prac. *Evidence Law and Practice* § 352 (1965), the author cites and comments on these earlier cases. In 5 Meisenholder, Wash. Prac. *Evidence Law and Practice* § 352, at 81 (Supp. 1974), the author points out that the Supreme Court

> is now recognizing more liberally, expert reconstruction of accident happenings and will be more willing to refuse to rule that such opinion should have been excluded because the jury did not need aid, if admitted at the trial level. Some of the stricter cases cited in the original text would no longer be followed.

The newer cases referred to include *Swartley v. Seattle School Dist. 1,* 70 Wn.2d 17, 421 P.2d 1009 (1966); *Gerard v. Peasley,* 66 Wn.2d 449, 403 P.2d 45 (1965); *Gerberg v. Crosby,* 52 Wn.2d 792, 329 P.2d 184 (1958).

■ The cases continue to hold the trial court must be permitted a wide discretion, reviewable only for abuse of discretion, in admitting or excluding opinion evidence, notwithstanding the reasons for admissibility or exclusion are both fairly debatable. *Myers v. Harter,* 76 Wn.2d 772, 781, 459 P.2d 25 (1969); *Swartley v. Seattle School Dist. 1, supra* at 22; *Hill v. C. & E. Constr. Co.,* 59 Wn.2d 743, 746, 370 P.2d 255 (1962). The rationale of the cases cited does not prevent the use of expert evidence of speed differential. We find no abuse of discretion, much less "a very plain abuse thereof," the test suggested in *Wilkins v. Knox,* 142 Wash. 571, 253 P. 797 (1927). *See Moyer v. Clark,* 75 Wn.2d 800, 454 P.2d 374 (1969).

■ Plaintiffs finally contend defendants' counsel's argument to the jury was highly improper and prejudicial. Defendants' counsel stated in closing argument:

> We are all people, we are all individuals, as Mr. Griffin has said, but I stand at this moment almost in the shoes of Herb Huston and I want you to think about now whether the accident caused these alleged symptoms and whether she was going to have them anyway. You have got these things — : she was married when she was just a youngster, fifteen or sixteen, apparently had a traumatic thing happen, had undergone psychiatric treatment, had attempted suicide twice, had legal custody of her children, but apparently had not seen fit to take actual physical custody of her kids, had gone to Alaska and she had worked for board and room for a single fellow up there.

Plaintiffs argue the quoted argument prejudiced the minds of the jurors who hold marriage, children and family sacred; that the argument of defendants' counsel had nothing to do with the merits of the lawsuit. Plaintiffs, to preserve for review the error claimed, made no request for a cautionary or curative instruction to limit the purpose for which the evidence referred to in the challenged argument could be considered. Such a request was necessary to permit review of the assignment of error discussed. *Spratt v. Davidson,* 1 Wn. App. 523, 463 P.2d 179 (1969).

■ The permissible scope of the argument, based on the evidence introduced without restriction as to use and the arguable inferences therefrom, was for the trial court. Defendants point out counsel's argument dealt with the cause of plaintiff's symptoms, a matter in issue between the parties. She had testified her pyloric spasms and other digestive complaints had arisen since the accident. Plaintiff's own medical witness, Dr. Bruce Kennedy, testified plaintiff's digestive complaints had an emotional origin. On cross-examination the doctor admitted in substance that plaintiff's unhappy domestic situation, the fact she had been living with a boyfriend and did not have actual custody of her children, played an important part in influencing her behavior. It is noted some testimony concerned with plaintiff's stomach injuries is omitted from the statement of facts. Whether that omitted testimony supports the position of either party on the assignment of error involved cannot be determined. Plaintiffs, however, presented their present contention to the trial court, who heard all the evidence, in support of their motion for new trial. The court denied the motion. We cannot say on the record here the court abused its discretion in doing so.

■ Plaintiffs finally contend their motion for directed verdict should have been granted. Such a motion can be granted only if we can say there is no evidence at all to support defendants' claims. *In re Estate of Thornton*, 81 Wn.2d 72, 499 P.2d 864 (1972); *Messina v. Rhodes Co.*, 67 Wn.2d 19, 406 P.2d 312 (1965). That is not the case here.

Affirmed.

SWANSON, C.J., and CALLOW, J., concur.