[No. 43065.    En Banc.    October 9, 1975.]

VERNA MAE SHELBY, *Individually and as Administratrix, Appellant,* v. GARY E. KECK *et al, Respondents.*

*William H. Fraser, Dan Austad,* and *J. Byron Holcomb,* for appellant.

*Merrick, Hofstedt & Lindsey,* by *H. J. Merrick* and *Thomas V. Harris,* for respondents.

HUNTER, J.—The plaintiff (appellant), Verna Shelby, in-

dividually and as administrator for her husband's estate, appeals from an order of the Superior Court for Kitsap County directing a verdict in favor of the defendant (respondent), Myhre's Incorporated, at the close of her case. The action arose out of an accidental shooting on the defendant's premises which claimed the life of the plaintiff's husband.

At approximately 6 p.m. on December 1, 1972, Gary E. Keck entered Myhre's restaurant and cocktail lounge, and joined Steve Patterson, who was seated in the rear of the establishment. Keck was wearing a shoulder holster containing a revolver concealed under a leather jacket, yet neither the defendant's employees nor any other patron was aware of this. Patterson and Keck proceeded to consume two drinks during the next 2 hours. According to all of the witnesses, Keck's behavior was normal and at no time did he become boisterous, out of line, or cause a disturbance indicating that he was intoxicated. At one point, Patterson did notice the holster and instructed Keck to keep it hidden. However, the defendant's employees were not informed as to the presence of the weapon.

At 7:30 p.m., the decedent, Billie Eugene Shelby, entered the lounge in the company of another couple. Within 15 minutes, a shot rang out, striking Shelby and inflicting what proved to be a fatal wound. The police arrived almost immediately and placed Keck under arrest. An investigation disclosed that the homicide was accidental, having resulted from Keck attempting to unload the weapon under the table. Furthermore, the investigation disclosed that Keck had a .16 blood alcohol by weight reading.

The decedent's wife brought suit against Keck and Myhre's. Prior to trial, the plaintiff entered into a covenant not to execute in favor of Keck, which provided that she would not seek damages in excess of $25,000, this sum having been paid by Keck's insurance company. A motion was made by Myhre's on the day of the trial to dismiss Keck as a party defendant on the grounds that he had no

interest in the action, either actual or potential. Keck's attorney joined in this motion and it was granted.

With reference to Myhre's, the plaintiff alleged in her complaint that the defendant was negligent by serving liquor to a man who they knew, or should have known, was carrying a loaded weapon. This was based on the fact that Keck had been removed from the establishment 3 weeks earlier for carrying a gun. A second ground asserted by the plaintiff was that Myhre's was negligent in permitting Keck to become intoxicated and therefore is responsible for his tortious act.

At the close of the plaintiff's case, defense counsel moved for a directed verdict. The trial court ruled that the plaintiff had failed, as a matter of law, to establish a prima facie case against Myhre's, and thereupon dismissed the plaintiff's case with prejudice.

The rules applicable for reviewing an order, directing a verdict in favor of a party and thereby removing the issue from the trier of fact, have been firmly established: (1) the evidence must be considered in a light most favorable to the nonmoving party; (2) there is no element of discretion involved; and (3) the motion shall be granted in only those instances where it can be held as a matter of law that there is no competent evidence, nor reasonable inferences arising therefrom, which would sustain a jury verdict in favor of the nonmoving party. *Browning v. Ward*, 70 Wn.2d 45, 422 P.2d 12 (1966); *Trudeau v. Haubrick*, 65 Wn.2d 286, 396 P.2d 805 (1964); *Frasch v. Leedom*, 62 Wn.2d 410, 383 P.2d 307 (1963); *Jones v. Leon*, 3 Wn. App. 916, 478 P.2d 778 (1970). In evaluating the evidence introduced, and all reasonable inferences arising therefrom, the trial court must determine whether the nonmoving party has presented *substantial evidence* establishing a prima facie case in support of its claim. *Hemmen v. Clark's Restaurant Enterprises*, 72 Wn.2d 690, 434 P.2d 729 (1967); *Martin v. Huston*, 11 Wn. App. 294, 522 P.2d 192 (1974).

The plaintiff's principal theory of recovery was that

the defendant violated its duty to exercise reasonable care to protect its patrons. In *Waldron v. Hammond*, 71 Wn.2d 361, 363, 428 P.2d 589 (1967), we stated:

> This court, in common with courts of other jurisdictions, has accepted and adhered to the rule that the keeper of an establishment wherein intoxicating liquors are dispensed, while not an insurer of the safety of his patrons, owes the duty to his patrons to exercise reasonable care and vigilance to protect them from *reasonably foreseeable injury*, mistreatment or annoyance at the hands of other patrons.

(Italics ours.) Considering the facts established at trial in a light most favorable to the plaintiff, we find the following. Gary Keck had been asked to leave the defendant's establishment 3 weeks earlier due to the presence of a weapon on his person, and on the night in question Mr. Keck was in the lounge for several hours prior to the shooting. Based on this evidence, the plaintiff contends that a jury would have been entitled to find that the defendant's employees failed to exercise reasonable care by not inquiring as to the presence of a weapon. Secondly, the plaintiff argues that she was entitled to an inference that the defendant's employees knew Keck was intoxicated due to the length of time Keck had been on the premises. We disagree.

The plaintiff's argument ignores the fact that her witnesses also testified that when Keck was asked to leave 3 weeks earlier he did so quietly, and that he had since returned to Myhre's, before the night in question, without a reoccurrence of a similar nature. Secondly, Steve Patterson testified that the gun was well concealed and that even he, seated next to Keck, never actually saw the weapon. Furthermore, the record shows that Keck had only ordered two drinks while in the tavern, and that at no time was he boisterous, nor did his physical mannerisms give any indication that he was intoxicated. To the contrary, the plaintiff's witnesses, without exception, testified that Keck appeared quiet and in full control of his faculties.

An inference in law is "[a] process of reasoning by which a fact or proposition sought to be established is

deduced as a *logical consequence* from other facts, or a state of facts, already proved or admitted." (Italics ours.) Black's Law Dictionary 917 (4th ed. 1968). It is our considered opinion that one cannot logically or reasonably infer that Keck was intoxicated merely from the fact that he was in the establishment for several hours. Even if Keck had consumed more than two drinks, his state of sobriety must be judged by the way he appeared to those about him, not by what a blood alcohol test later revealed. The record discloses nothing which would have put a reasonable man on notice that Keck was intoxicated and posed a threat to other patrons. Moreover, the rule enunciated in *Waldron v. Hammond, supra,* holds the keeper of an establishment responsible for injury in only those instances where the threat of harm was *reasonably foreseeable.* Without further evidence which would alert a reasonable man in the defendant's position that Keck was likely to be armed and thereby posed a threat to the safety of his other patrons, the mere fact that he had once been instructed to leave the lounge due to the presence of a weapon is insufficient to require the defendant to conduct a "search" whenever Keck subsequently frequented the establishment. The record is completely void of any such evidence, and we therefore hold that the trial court did not err in directing a verdict in favor of the defendant, since the plaintiff failed to introduce sufficient evidence to establish a prima facie case in support of her claim.

A second theory of recovery put forth by the plaintiff is that the defendant should be held responsible for the tortious conduct of one who was served liquor while intoxicated. The plaintiff bases her argument on the fact that the police investigation revealed that Keck had a .16 blood alcohol reading. In effect, the plaintiff seeks to have this court adopt a theory of strict liability to be applied against one who furnishes liquor whenever a patron commits a tort while intoxicated. The rule proposed by the plaintiff amounts to a common-law "Dramshop Act" (a misnomer since remedies provided under these types of statutes were

unknown at common law), to replace the statutory provision repealed by our legislature. Laws of 1955, ch. 372, § 1, repealing RCW 4.24.100. We find this theory of recovery totally unacceptable.

At common law a vendor of intoxicating liquors was not answerable to a third person for injury or damage sustained by the latter as a result of the intoxication of the purchaser of the liquor. *See, Right of action at common law for damage sustained by plaintiff in consequence of sale or gift of intoxicating liquor or habit-forming drugs to another,* Annot., 75 A.L.R.2d 833 (1961); *Fleckner v. Dionne,* 94 Cal. App. 2d 246, 210 P.2d 530 (1949). The reason given was that the proximate cause of the injury was the drinking of the liquor, not the furnishing of it. 45 Am. Jur. 2d, *Intoxicating Liquors* § 553 (1969); *Halvorson v. Birchfield Boiler, Inc.,* 76 Wn.2d 759, 458 P.2d 897 (1969). However, this common-law rule has been modified to allow a right of action under two theories of recovery, the first of which was discussed previously in this opinion.

A second theory under which an action is allowed at common law is where liquor is sold to a person who is so intoxicated that he has been effectively deprived of his will power or responsibility for his actions. *Brockett v. Kitchen Boyd Motor Co.,* 264 Cal. App. 2d 69, 70 Cal. Rptr. 136 (1968); *Rappaport v. Nichols,* 31 N.J. 188, 156 A.2d 1, 75 A.L.R. 821 (1959); *also see, Liability of innkeeper, restaurateur, or tavern keeper for injury occurring on or about premises to guest or patron by person other than proprietor or his servant,* Annot. 70 A.L.R.2d 628 (1960). Those jurisdictions which have adopted this approach emphasize that it is based on common-law negligence, thereby requiring proof that the seller knew, or should have known in the exercise of reasonable care, that the furnishing of liquor to this individual posed a foreseeable threat of serious harm to another. *Rappaport v. Nichols, supra.* While this rule is in derogation of the strict common-law approach, as stated above, neither *Rappaport* nor Justice Finley's dissent in *Halvorson v. Birchfield Boiler, Inc., supra,* both of which

are relied upon by the plaintiff, would establish a "common-law dramshop act." In fact, Justice Finley's entire dissent is concerned with what was "reasonably foreseeable." *Halvorson v. Birchfield Boiler, Inc.*, *supra* at 768-69. Furthermore, the case law of this state has repeatedly recognized that a tavern owner is not the "insurer of his patrons' safety," thus excluding any tendency to adopt a strict liability approach. *Waldron v. Hammond*, *supra*; *Miller v. Staton*, 58 Wn.2d 879, 365 P.2d 333 (1961); *Jones v. Leon*, *supra*.

■ While the common law is not so inflexible as to deprive all injured parties of a right of recovery against the seller of intoxicants under all circumstances, it will not permit liability to attach without a concomitant showing of a violation of an established standard of reasonable care thereby causing a foreseeable injury. The acceptance of this philosophy by the State of Washington is clearly reflected by the actions of the legislature and the opinions of this court.

Applying this standard to the facts of this case we find that there was no competent evidence, nor any reasonable inference which would arise therefrom, to support a finding that the defendant's employees had notice that they were furnishing liquor to an individual who was intoxicated, let alone one who had lost his willpower or who was so inebriated as to no longer be held responsible for his conduct. Therefore, due to the plaintiff's failure to present a prima facie case entitling her to present her case to the jury, the trial court was correct in directing a verdict in favor of the defendant.

The plaintiff's final assignment of error goes to the trial court's dismissal of Keck as a party defendant from this action. The plaintiff argues that the covenant not to execute merely set the upper limit of Keck's potential liability, but it did not dismiss him from the action. Therefore, applying the Washington rule that joint tort-feasors may be sued either together or separately, the plaintiff contends that it was error to dismiss Keck from this action. We disagree.

The plaintiff's theory of joint and several liability is without merit since Myhre's liability was premised on its independent acts of alleged negligence, irrespective of Keck's liability. Secondly, the statement of facts establish that Keck was, in effect, out of this suit. Even though the covenant did not explicitly dismiss him, it did set the upper limits of his liability and, by accepting the $25,000, the plaintiff had assured herself against the jury holding against Keck for a lower amount. Therefore, the covenant must be viewed as a binding settlement between the plaintiff and Keck, leaving no justiciable issue to be resolved between these parties.

CR 21 permits the trial court, on motion of any party or on its own motion, to drop a party from the action on such terms as are just. In the instant case, the plaintiff desired to get certain statements made by Keck before the jury under the admissions exception to the hearsay rule. While there is no dispute that such statements would be admissible against Keck, were he a defendant, they would clearly be inadmissible against Myhre's since there was no evidence of a respondeat superior relationship between the two parties. By utilizing CR 21, the trial court merely sought to avoid a possible misuse of the evidence by the jury. If, however, the plaintiff truly believed that Keck's presence was vital to the proper disposition of this case, she could have moved to have him declared an indispensable party under CR 19(a).

The application of CR 21 is within the sound discretion of the trial court whose decision will not be disturbed on appeal absent a manifest abuse of that discretion. 3A L. Orland, Wash. Prac. 412 (2d ed. 1968); *Weaver v. Marcus,* 165 F.2d 862 (4th Cir. 1948). There is nothing in the record before this court which would indicate such an abuse.

For the reasons stated herein, the decision of the trial court is affirmed.

STAFFORD, C.J., and FINLEY, ROSELLINI, HAMILTON, and WRIGHT, JJ., concur.

UTTER, J. (dissenting)—I cannot agree with the majority

that the trial court properly dismissed plaintiff's action for failing to establish a prima facie case. I believe a jury question exists as to the defendant's negligence in failing to search Gary Keck on the night of the fatal shooting, although he had been expelled from the defendant's premises 3 weeks earlier for carrying a partially concealed gun. The majority, I believe, improperly decides this issue as a matter of law by holding the evidence insufficient to alert a reasonable man in the defendant's position that Keck was likely to be armed. To reach this conclusion, the majority must ignore the test it acknowledges is proper to apply in considering motions to dismiss for failure to establish a prima facie case. This test is that the evidence must be considered in a light most favorable to the nonmoving party; no discretion on the part of the court is involved, and it is proper to grant the motion only when there is no competent evidence or reasonable inference arising therefrom to sustain a jury verdict for the nonmoving party.

The question before us is what, giving the plaintiff the benefit of all the inferences in her favor, was reasonable conduct in light of the apparent risk Keck's behavior created. W. Prosser, *Torts* § 53 (3d ed. 1964). Courts have long recognized an obligation to exercise control over the conduct of third parties, where the relationship of an innkeeper to his guests exists. Prosser, *supra* at 334. As the majority recognizes, this special obligation toward third parties is heightened where intoxicating liquors are served. *Waldron v. Hammond,* 71 Wn.2d 361, 363, 428 P.2d 589 (1967). These factors place the defendant in a special relationship to decedent regarding control over third persons' conduct toward him.

The majority makes a flat statement without supporting authority in dismissing plaintiff's case as a matter of law that "the mere fact that he had once been instructed to leave the lounge due to the presence of a weapon is insufficient to require the defendant to conduct a 'search' whenever Keck subsequently frequented the establishment." This seems to me to state the issue too broadly and deprive

plaintiff of the benefit of reasonable inferences in her favor. A reasonable man might well conclude that, if Mr. Keck appeared 3 years after the initial incident and had, in the intervening time, frequently come to the restaurant without being armed, a search would be unreasonable. Here, however, there was only a 3-week interval during which Keck had been in the restaurant once. Properly according the plaintiff the inferences in her favor, the special obligations, short of absolute liability imposed on innkeepers, the short period of time between Keck's expulsion for carrying a firearm and the fatal shooting of the decedent, and the lethal nature of the possible combination of alcohol and a firearm, would seem to me to leave a jury question on the issue of defendant's liability.

BRACHTENBACH and HOROWITZ, JJ., concur with UTTER, J.