## HOLLERUD v. MALAMIS

1. INTOXICATING LIQUORS—DRAMSHOP ACT.
    The dramshop act provides a cause of action against a tavern
    owner who furnishes liquor to an intoxicated person in favor
    of every wife, husband, child, parent, guardian or other
    persons damaged by the intoxicated person (MCLA § 436.22).

2. INTOXICATING LIQUORS—DRAMSHOP ACT—INTOXICATED PERSON.
    A consumer of liquor who becomes intoxicated has no cause of
    action under the dramshop provision giving a cause of action
    to a certain category of persons who have been damaged by
    an intoxicated person's act (MCLA § 436.22).

3. INTOXICATING LIQUORS—DRAMSHOP—SALES—INTOXICATED PERSON
    —LIABILITY.
    A statutory provision that no vendor shall sell any alcoholic
    liquor to any person in an intoxicated condition did not
    enlarge the category of persons who might recover under the
    dramshop act; consequently, an intoxicated person himself
    cannot assert a claim against a liquor vendor for the sale
    of liquor to him in violation of that statutory prohibition
    (MCLA §§ 436.22, 436.29).

4. INTOXICATING LIQUORS—SALES—TORTS—LIABILITY.
    Selling or giving intoxicating liquor to a strong and able-bodied
    man was not a tort at common law.

---

REFERENCES FOR POINTS IN HEADNOTES
[1–5, 11, 12] 45 Am Jur 2d, Intoxicating Liquors § 561 et seq.
    Liability of persons furnishing intoxicating liquor for injury or
        death of consumer, outside coverage of civil damage acts.    54
        ALR2d 1152.
[6, 7]  20 Am Jur 2d, Courts § 183 et seq.
[8]  41 Am Jur, Pleadings § 1 et seq.
[9, 10]  41 Am Jur, Pleadings § 220.
[13]  41 Am Jur, Pleadings § 340 et seq.
[14, 15]  6 Am Jur 2d, Assault and Battery §§ 109, 155–157.

5. INTOXICATING LIQUORS—DRAMSHOP ACT—SALES—DUE CARE.

The dramshop act makes a tavern owner liable for damage caused third persons by an intoxicated person to whom the tavern owner sells liquor even if the tavern owner exercised due care to avoid making a sale to an intoxicated person (MCLA § 436.22).

6. INTOXICATING LIQUORS—NEGLIGENCE—COMMON LAW—APPELLATE COURT.

Announcing liability of a liquor vendor for ordinary common-law negligence entirely independent of a dramshop statute prescribing a standard of care in favor of injured persons is not the function of an intermediate appellate court.

7. COURTS—LAW—NEW RULES—PRECEDENT.

Announcement, in opposition to a large generally accepted body of precedent, of new rules of law without precedent other than by analogies in any common-law jurisdiction must be left to final courts of review.

8. PLEADING—PARTIES—APPRISEMENT—COURT RULE.

A pleading must inform the adverse party of the nature of the cause he is called upon to defend (GCR 1963, 111.1).

9. PLEADING—COMPLAINT—AMBIGUITY—INDEFINITENESS—MOTION.

Ambiguity or indefiniteness of a complaint can be attacked only by a motion for a more definite statement (GCR 1963, 115.1).

10. DISMISSAL AND NONSUIT—INTOXICATING LIQUORS—DRAMSHOP ACT—NEGLIGENCE—INTOXICATED PERSON.

Dismissal of claims by an intoxicated person against liquor vendors for violations of the dramshop act and common-law negligence in selling him liquor was proper (MCLA § 436.22).

11. INTOXICATING LIQUORS—DRAMSHOP ACT—INFANT—SUPPORT.

Plaintiff, an infant, was not precluded from proving that her right of support by her father was damaged by defendants in violation of the dramshop act even though she had other means of support, her support needs were met by a relative and she was not allowed to starve (MCLA § 436.22).

12. INTOXICATING LIQUORS—DRAMSHOP ACT—INFANT—DISMISSAL.

Claim of infant plaintiff that her right to her father's support was permanently impaired by defendants' violations of the dramshop act was improperly dismissed even though the loss of her father's support between 1962 and 1964 was caused solely by her father's injuries in an automobile collision

which preceded defendants' sales of liquor to him where there was a further issue concerning her loss of support after the time in 1964 when her father again began to seek employment (MCLA § 436.22).

13. Motions—Summary Judgment—Affidavit.

Dramshop act plaintiff had no obligation to show affirmatively that there was a genuine issue regarding her claim of permanent injury to her means of support where defendants' summary judgment motions did not assert an absence of a genuine issue of any material fact regarding her claim (GCR 1963, 117.3).

14. Assault and Battery—Action—Civil—Defense—Consent— Exception.

Consent is ineffective as a defense to a civil action for assault and battery where a plaintiff, owing to his state of intoxication, is incapable of expressing a rational will and a defendant has knowledge of plaintiff's mental state.

15. Assault and Battery—Intoxication—Issue of Fact.

Whether plaintiff was in such an advanced state of intoxication while he was in defendants' tavern that he was incapable of freely and voluntarily consenting to an Indian wrestling match in which his fingers were injured presented a genuine issue of material fact and dismissal of his complaint for assault and battery was error.

Appeal from Wayne, Carl M. Weideman, J. Submitted Division 1 December 3, 1968, at Detroit. (Docket No. 4,173.) Decided December 10, 1969.

Complaint by Edward Hollerud, for himself and as next friend of Karen Dell Hollerud, against Spiros J. Malamis, Albert J. Shepard, John Ingoglia, Josephine Ingoglia, Joseph Ingoglia, Safeguard Insurance Company, Midland National Insurance Company, Western Casualty & Surety Company and Charles Ingoglia for violation of the dramshop act, common-law negligence, and assault and battery. Summary judgment for defendants. Plaintiffs appeal. Reversed and remanded,

*Charles H. Novelli,* for plaintiffs.

*Alexander, Buchanan & Conklin (Thomas G. Grubba,* of counsel), for defendants John Ingoglia, Josephine Ingoglia, Joseph Ingoglia, and Western Casualty & Surety Company.

*Metry, Metry, Sanom, Ashare & Goldman,* for defendants Spiros J. Malamis, Albert J. Shepard, Safeguard Insurance Company, and Midland National Insurance Company.

Before: LEVIN, P. J., and HOLBROOK and ROOD,* JJ.

LEVIN, J.  On December 14, 1962, plaintiff Edward Hollerud consumed 12 bottles of beer in Pinky's Bar, had dinner, and then moved on to the Rainbow Bar where he had four additional beers.  In the Rainbow Bar he engaged in an Indian wrestling contest with the bartender and injured fingers on his left hand.[1]  The complaint states three separate causes of action:

1. Edward Hollerud's claim against the owners of the two bars asserting that his injuries were caused by their violations of the dramshop act, MCLA § 436.22 (Stat Ann 1969 Cum Supp § 18.993), and by their negligence in selling him liquor.

2. Karen Hollerud's claim under the dramshop act alleging that her father's injuries deprived her of "means of support."

3. Edward Hollerud's claim asserting that the bartender at the Rainbow Bar committed an assault and battery upon him.

---

* Circuit Judge, sitting on the Court of Appeals by assignment.
[1] The complaint was dismissed before trial.  The foregoing statements are based on the deposition testimony of Edward Hollerud.

The trial judge granted the defendants' motions for summary judgment dismissing plaintiffs' claims on the ground that Edward Hollerud failed to state a cause of action and Karen Hollerud failed to show that there is a genuine issue of material fact.[2]

## I.

The Michigan liquor control act[3] contains two relevant sections, §§ 22[4] and 29.   Section 22 (the dramshop act) provides a cause of action against a tavern owner who furnishes liquor to an intoxicated person in favor of "every wife, husband, child, parent, guardian or other persons" damaged by the intoxicated person.   Edward Hollerud now concedes that he, the consumer of the liquor, has no cause of action under § 22.

In *Malone* v. *Lambrecht* (1943), 305 Mich 58, 62, the Michigan Supreme Court considered and rejected the argument that § 29, "No vendor shall sell any alcoholic liquor to any person in an intoxicated condition", establishes a statutory duty independent of § 22, and that an intoxicated person injured by a breach of such statutory duty may recover for damage caused by the breach.[5]   The

---

[2] See GCR 1963, 117.2(3).

[3] PA 1933 (Ex Sess), No 8, as amended (MCLA § 436.1 [Stat Ann 1957 Rev § 18.971]).

[4] "Every wife, husband, child, parent, guardian or other persons who shall be injured in person or property, means of support or otherwise, by an intoxicated person by reason of the unlawful selling, giving or furnishing to any such persons any intoxicating liquor, shall have a right of action in his or her name against the person who shall by such selling or giving of any such liquor have caused or contributed to the intoxication of said person or persons or who shall have caused or contributed to any such injury, and the principal and sureties to any bond given under this law shall be liable, severally and jointly, with the person or persons selling, giving or furnishing any spirituous, intoxicating or malt liquors as aforesaid * * * " MCLA § 436.22 (Stat Ann 1969 Cum Supp § 18.993).

[5] See 2 Restatement, Torts, 2d, § 286, p 25; *Rappaport* v. *Nichols* (1959), 31 NJ 188 (156 A2d 1, 75 ALR2d 821); *Adamian* v. *Three Sons, Inc.* (1968), 353 Mass 498 (233 NE2d 18); *Galvin* v. *Jennings*

Court reviewed its decisions under pre-prohibition dramshop statutes holding that the intoxicated person himself cannot assert a claim and concluded that it was not intended by post-prohibition § 29 to enlarge the category of persons who might recover. *Malone's* holding that the intoxicated person has no rights under § 29 was followed in *McDaniel* v. *Crapo* (1950), 326 Mich 555, and in *Kangas* v. *Suchorski* (1964), 372 Mich 396.[6]

Edward Hollerud alternatively asserts that he has a common-law cause of action for negligence independent of the statute. In our opinion this issue is not necessarily foreclosed by the statements of our Supreme Court in *Jones* v. *Bourrie* (1963),

---

(CA 3, 1961), 289 F2d 15. In *Galvin* v. *Jennings* a regulation of the state division of alcoholic beverage control was found to have the force of a statute.

[6] We recognize that cases decided in other jurisdictions (under a statutory pattern differing from Michigan's) allow an intoxicated person himself to recover for breach of a statutory duty imposed on sellers of intoxicating beverages. We are not aware of any decision allowing the patron to recover where the statute, like ours, imposes absolute liability for sale of intoxicants to a "person in an intoxicated condition" without regard to the visibility of that condition to the bartender or the contributory negligence of the patron. In *Soronen* v. *Olde Milford Inn, Inc.* (1966), 46 NJ 582 (218 A2d 630), *Schelin* v. *Goldberg* (1958), 188 Pa Super 341 (146 A2d 648), and *Majors* v. *Brodhead Hotel* (1965), 416 Pa 265 (205 A2d 873), the basis of liability under the statute being construed was fault, *i.e.*, sale to a visibly intoxicated person; but *cf. Adamian* v. *Three Sons, Inc., supra* fn. 5, discussed in footnote 15. These courts also held that the contributory negligence of the patron is not a defense; this is understandable since the statutes considered by those courts provided or were interpreted as providing a basis of recovery only on account of a sale to a visibly intoxicated person. In *Ramsey* v. *Anctil* (1965), 106 NH 375 (211 A2d 900), the statute before the court prohibited sale "to a person under the influence of liquor." The New Hampshire Supreme Court ruled that the prohibition of the statute was for the benefit of the patron as well as third persons who might suffer loss because of his intoxication but held that contributory negligence might be a defense.

In any event, we are bound by the recent decisions of our Supreme Court denying recovery under our statute. *Cf. Maxwell* v. *Maxwell* (1969), 15 Mich App 607, 614, fn. 13, and *Michigan Transportation Company* v. *Good* (1969), 16 Mich App 226, fn. 1, with *Abendschein* v. *Farrell* (1968), 11 Mich App 662, *affirmed Abendschein* v. *Farrell* (1969), 382 Mich 510.

369 Mich 473, 476, and *Kangas* v. *Suchorski, supra,*
p 401, that the dramshop act provides the exclusive
remedy.[7] While the Supreme Court may yet declare
that the dramshop act is so far exclusive of other
remedies that the tavern owner has no liability
whatsoever except under the dramshop act,[8] we
prefer not to anticipate such a holding and note
that in both *Jones* and *Kangas* the plaintiffs sought
to recover for injuries caused by an intoxicated
person. Here a claim is advanced on account of
injuries sustained by an intoxicated person who, as
previously mentioned, has no remedy under the
dramshop act.[9] Additionally, this aspect of Edward
Hollerud's common-law theory is not predicated on
the absolute liability of §§ 22 and 29 but, rather, is
based on the defendant tavern owners' alleged fault
in selling him liquor when he was visibly intoxicated.

In *Cruse* v. *Aden* (1889), 127 Ill 231 (20 NE 73),
the Supreme Court of Illinois declared (in *dictum*),
without citation of authority, that at common law
it was not a tort to sell or give intoxicating liquor

[7] In *Jones* the plaintiff commenced his action after the two-year
statute of limitations provided in § 22 (the dramshop act) had
expired; he attempted unsuccessfully to recover for injuries caused
by the intoxicated person independently of § 22 asserting that
violation of § 29 was negligence and that the three-year statute of
limitations governed.

In *Kangas* the plaintiff consumed liquor in a bar and was assaulted
by another patron; he attempted unsuccessfully to recover for neg-
ligence claiming that in allowing the other patron to remain on
the premises in his intoxicated condition the tavern owner failed to
maintain a suitable place and safe conditions for business invitees.

[8] Such a declaration would mean that a consumer could not recover
even for intentional, reckless or grossly negligent conduct of the
tavern owner (see text accompanying footnote 24, *infra*). *Cf. Baker*
v. *Golematis* (1969), 17 Mich App 383, affirming a jury verdict in
favor of an intoxicated customer against a tavern owner for negli-
gence; the customer was injured in a fight with a bartender who
also was intoxicated.

[9] See Mr Justice BLACK's separate opinion in *Abendschein* v. *Far-
rell* (1969), 382 Mich 510, 525, where he stated that the "only reason"
recovery on a common-law theory was not allowed in *Jones* v. *Bourrie*
(1963), 369 Mich 473 was that the Michigan statute provided an
adequate remedy for the wrong claimed.

to a strong and able-bodied man. This statement has been repeated by many courts and found its way into the encyclopedias.[10] Recovery has been denied on various theories. In some cases it was simply concluded that the consumption rather than the supplying of the liquor was the "proximate cause" of the intoxicated person's injury. In other cases, the courts went on to argue that the consumption of the liquor was independent of the sale, the result of the free exercise of the consumer's will, an intervening cause. Still other courts declared that a consumer could not recover because his condition was caused by his contributory negligence.[11]

These judicial pronouncements were modified by statutes (such as our dramshop act) imposing civil liability. Broad-form dramshop acts, like Michigan's, make the tavern owner liable for damage caused third persons by an intoxicated person to whom the tavern owner sells liquor even if the tavern owner exercised due care to avoid making a sale to an intoxicated person. The enactment of dramshop acts in some 37 states no doubt greatly inhibited the development of the common-law concerning the civil liability of liquor vendors.

[10] See *LeGault* v. *Klebba* (1967), 7 Mich App 640; *Duncan* v. *Beres* (1968), 15 Mich App 318, 331; *Noonan* v. *Galick* (1955), 19 Conn Supp 308 (112 A2d 892); see Note, 49 Minn L Rev 1154, 1156 (1965); Comment, 12 Baylor L Rev 388 (1960); 45 Am Jur 2d, Intoxicating Liquors, § 553, p 852. Similarly, see 48 CJS, Intoxicating Liquors. § 430, pp 716, 717. The common-law rule is discussed in the law reviews cited in footnote 14.

[11] See *Cole* v. *Rush* (1955), 45 Cal 2d 345 (289 P2d 450, 54 ALR2d 1137); *Pratt* v. *Daly* (1940), 55 Ariz 535 (104 P2d 147); *Lee* v. *Peerless Insurance Company* (1966), 248 La 982, 987 (183 So 2d 328, 330); *Cherbonnier* v. *Rafalovich* (DC Alaska, 1950), 88 F Supp 900. In *Fuller* v. *Standard Stations, Inc.* (1967), 250 Cal App 2d 687 (58 Cal Rptr 792), the California Court of Appeals, commenting on the *Cole* v. *Rush* analysis of proximate and intervening cause, declared that it forms "a back-eddy running counter to the mainstream of modern tort doctrine," but held that it was bound to follow that decision of California's highest court.

Many States repealed their dramshop acts at the beginning or end of national prohibition. Today ten states have broad-form dramshop acts, but many, while eliminating the express remedy of the dramshop act, retained or enacted statutes prohibiting the sale (and sometimes, the giving) of liquor to minors, drunkards or visibly intoxicated persons.[12]

The New Jersey statute prohibits the sale of liquor to minors. In *Rappaport v. Nichols* (1959), 31 NJ 188 (156 A2d 1, 75 ALR2d 821), that state's Supreme Court rejected the argument that when its legislature repealed its dramshop act it intended to eliminate altogether the civil liability of tavern owners, and held that a third person injured by an inebriated minor could recover for the tavern owner's *common-law negligence* in violating the statutory prohibition.

*Rappaport* is generally regarded as the seminal opinion recognizing a common-law right of action independent of the express remedy provided by a dramshop act.[13] Even though it represents merely

---

[12] McGough, Dramshop Acts, Proceedings, American Bar Association, Section of Insurance, Negligence and Compensation Law, p 448 (1967).

[13] Actually *Schelin v. Goldberg, supra* fn. 6, preceded *Rappaport*. In *Schelin* the intoxicated patron was allowed to recover for his injuries on the theory that the sales to him in violation of a statute prohibiting sale of liquor to a visibly intoxicated person was a breach of a duty owed the patron and, thus, negligence. The statute relied on (making it unlawful to sell or give liquor to a visibly intoxicated person) repealed an earlier statute which provided that any person who furnishes liquor in violation of law shall be civilly responsible for any consequential injury to person or property; repeal of the specific remedy was held not to preclude recovery for violation of the new statutory provision even though it did not expressly provide a remedy. *Schelin* was followed by the Pennsylvania Supreme Court in *Smith v. Clark* (1963), 411 Pa 142 (190 A2d 441); in that case also the patron was allowed to recover.

Also preceding *Rappaport* is *Waynick v. Chicago's Last Department Store* (CA 7, 1959), 269 F2d 322, which relied on the Michigan case of *Stout v. Keyes* (1845), 2 Doug 184 (43 Am Dec 465), in declaring that under the common law of Michigan third persons could recover from an Illinois liquor seller for injuries suffered in an automobile

· an application to sales of liquor of the familiar
principle that it is or may be negligence to violate
a standard of care set out in a statute which the
court decides was intended to benefit a class of
persons or the public as a whole, this decision was
widely and favorably commented upon;[14] it has been
frequently followed by other courts,[15] but not al-
ways.[16]

accident in Michigan caused by a driver to whom the liquor seller
had made a sale in violation of the Illinois statute.

[14] A comprehensive discussion of the case law is to be found in
Common Law Liability of the Liquor Vendor, 18 W Res L Rev 251
(1966). Additionally, see Notes, 58 Mich L Rev 1075 (1960); 60
Colum L Rev 554 (1960); 13 Vand L Rev 1308 (1960); 48 Ky L J 611
(1960); also Common Law Liability of Liquor Vendors, 12 Baylor L
Rev 388 (1960); The Common Law Liability of Minnesota Liquor
Vendors for Injuries Arising from Negligent Sales, 49 Minn L Rev
1154 (1965); Johnson, Drunken Driving—The Civil Responsibility
of the Purveyor of Intoxicating Liquor, 37 Ind L J 317 (1962);
Cahn, New Common Law Dramshop Rule, 9 Clev-Mar L Rev 302
(1960).

[15] See, e.g., Elder v. Fisher (1966), 247 Ind 598 (217 NE2d 847);
Adamian v. Three Sons, Inc. (1968), 353 Mass 498 (233 NE2d 18);
Colligan v. Cousar (1963), 38 Ill App 2d 392 (187 NE2d 292); Ber-
keley v. Park (1965), 47 Misc 2d 381 (262 NYS2d 290); Mitchell
v. Ketner (1965), 54 Tenn App 656 (393 SW2d 755); Pike v. George
(Ky, 1968), 434 SW2d 626.

In Adamian, the Supreme Judicial Court of Massachusetts re-
jected the reasoning of Cole v. Rush, supra fn. 11, and "inflexible
adherence to the theory that the drinker alone is responsible, re-
gardless of how intoxicated he may be when a bartender repeatedly
serves him," stated that "a strong recent trend has been that the
sale by a bartender to an intoxicated drinker may be found to be
the proximate cause of an injury to a third person caused by the
drinker's driving of an automobile," expressly adopted the views
stated in Rappaport and allowed recovery by an injured third person
(intimating that the intoxicated person himself might also be al-
lowed to recover) for violation of a statute prohibiting sales "to an
intoxicated person" even though the dramshop act which gave
an express right of action had been repealed. However, in the
companion case of Dimond v. Sacilotto (1968), 353 Mass 501 (233
NE2d 20), the holding in Adamian was limited to a situation where
the evidence warrants a finding that the defendant liquor seller knew
or should have known that the customer would depart by automobile.

In Davis v. Shiappacossee (Fla, 1963), 155 So 2d 365, it was held
that a father has a cause of action against a liquor vendor for selling
a case of beer and whiskey to a minor (in an auto at the time with
other boys) on the theory that violation of the statute prohibiting
sale of alcoholic beverages to a minor made the defendant's act
negligence per se.

[16] See. Hall v. Budagher (1966), 76 NM 591 (417 P2d 71); Lee

While there has been much discussion[17] of the
"new" common-law liability for negligent sale of
intoxicants, we have found but one case (see foot-
note 22) where liability has been imposed for ordi-
nary negligence (*e.g.*, sale to a visibly intoxicated
person) independently of a statute establishing a
standard of care in regard to the sale of liquor.[18]

In *LeGault* v. *Klebba* (1967), 7 Mich App 640,
our Court held that one who hosts a party has no
liability for injuries caused by an intoxicated
guest.[19]    Concern has been expressed that recog-
nizing liability for ordinary negligence in dispensing
liquor might be too fruitful a source of litigation.[20]

The experience of New Jersey and of the other
states which adopted *Rappaport* and that of states
such as our own which impose the absolute liability
of the dramshop act is, of course, some evidence
that the amount of ensuing litigation is manageable.

Nevertheless, having in mind our function as an
intermediate appellate court,[21] we do not think that
we would be justified in announcing liability for
*ordinary* negligence in this sector of the law com-
pletely independent of a statute prescribing a stand-
ard of care.[22]    The announcement in opposition to

v. *Peerless Insurance Company, supra* fn. 11; *Vallentine* v. *Azar*
(1968), 8 Ariz App 247 (445 P2d 449). See, also, *Noonan* v. *Galick*
(1955), 19 Conn Supp 308 (112 A2d 892); *Carr* v. *Turner* (1965),
238 Ark 889 (385 SW2d 656).

[17] See footnote 14.

[18] *Cf. Elder* v. *Fisher* (1966), 247 Ind 598 (217 NE2d 847, 852)
and *Galvin* v. *Jennings, supra* fn. 5.

[19] *Cf. Carr* v. *Turner, supra* fn. 16.

[20] See *Carr* v. *Turner, supra* fn. 16; *Noonan* v. *Galick, supra* fn. 16.

[21] *Cf. Vallentine* v. *Azar, supra* fn. 16, with *Mitchell* v. *Ketner,
supra* fn. 15. See, also, *Abendschein* v. *Farrell* (1968), 11 Mich App
662, 680, Levin, P. J., dissenting.

[22] *Cf. Cowman* v. *Hansen* (1958), 250 Iowa 358, 373 (92 NW2d
682, 690); *Noonan* v. *Galick, supra* fn. 16; *Farmers Mutual Auto-
mobile Insurance Company* v. *Gast* (1962), 17 Wis 2d 344 (117 NW
2d 347); contrast *Berkeley* v. *Park, supra* fn. 15.

There is one case that could be said to recognize liability at com-
mon law completely independent of statute. In *Mitchell* v. *Ketner,
supra* fn. 15, the Tennessee Court of Appeals remanded for a new

a large generally accepted body of precedent of new rules of law, without precedent (other than analogies) in any common-law jurisdiction (excepting only the one case referred to, see footnote 22) must be left to final courts of review. We again mention that our Supreme Court has held that the section of our statute which prescribed a standard of care, § 29 (our counterpart[23] of the statutory standard relied on in *Rappaport*), does not confer a remedy on the intoxicated consumer himself.

A common-law cause of action arising independently of a statutory duty or prohibition has been

---

trial a case where the administrators of persons killed by an intoxicated driver sought damages from the liquor seller. Tennessee had no relevant statute. The Court cited *Waynick* and *Rappaport* (see footnote 13), noted that *Waynick* was based on a statute but did not take notice of that distinguishing fact in its discussion of *Rappaport,* and stated that it could see little difference between the act of an owner entrusting an automobile to an intoxicated person and the act of selling liquor to an intoxicated person knowing that he is likely to drive on the highway, and held that it was not prepared to hold regardless of the circumstances that the act of the purchaser and not the sale constitutes the proximate cause of injury or that the consumption of the intoxicant is always an independent, intervening act. See, also, Justice BLACK'S separate opinion in *Abendschein* v. *Farrell* (1969), 382 Mich 510, 525, stating that *Waynick* exhibited "a classic and visibly wholesome application of the common law of Michigan to an otherwise remediless situation."

In this connection we note that commentators have remarked on the failure of the courts to analogize the sale of intoxicants to a visibly intoxicated person who it appears likely will drive an automobile to the well-established rule (8 Am Jur 2d, Automobiles and Highway Traffic, § 576, pp 130, 133), that one who entrusts an automobile to a visibly intoxicated person is liable for consequential injury. Johnson, Drunken Driving—The Civil Responsibility of the Purveyor of Intoxicating Liquor, 37 Ind L J 317, 328, 329 (1962); Common Law Liability of the Liquor Vendor, 18 W Res L Rev 251 (1966). See, also, *Fuller* v. *Standard Stations, Inc., supra* fn. 11. Nevertheless, we think this opinion of Tennessee's Court of Appeals is too thin a reed upon which to rest a decision of our Court recognizing liability for common-law negligence entirely independent of statute in favor of the *consumer,* where the analogy of liability for negligent entrustment might not be pertinent.

[23] Again we recognize a substantive distinction; § 29 does not impose a duty of due care (*e.g.* a prohibition of sales of liquor to a visibly intoxicated person), but is an absolute prohibition of the sale of liquor to an intoxicated person. See discussion in footnote 6.

recognized in a few unusual cases where the consumer could be said to have lost his free will, *e.g.*, where he was addicted to alcohol or intoxicated to the point of helplessness and such addiction or incapacity was known to the vendor or should have been.[24] The sale in such a case has been viewed as merging with the consumption, thus becoming the cause of injury on the rationale that a person in such a state could not consent or be guilty of contributory negligence.

We see no need to decide whether there is a common-law cause of action in this State, independent of the statute, for serving intoxicating beverages to one known to be addicted to alcohol or who is already intoxicated to the point of helplessness. Nothing in Edward Hollerud's complaint alerted either the trial judge or the defendants to the possibility that Hollerud's common-law theory was based on the claim that the defendants' acts or omissions amounted to more than ordinary negligence, that he claimed he was the victim of the kind of intentional, reckless or grossly negligent

[24] See *McCue* v. *Klein* (1883), 60 Tex 168 (48 Am Rep 260); *Nally* v. *Blandford* (Ky, 1956), 291 SW2d 832; *Ibach* v. *Jackson* (1934), 148 Ore 92 (35 P2d 672); *Swanson* v. *Ball* (1940), 67 SD 161 (290 NW 482); *Pratt* v. *Daly* (1940), 55 Ariz 535 (104 P2d 147, 130 ALR 341). *McCue, Nally* and *Ibach* were actions for wrongful death and, thus, proceeded on the theory that the deceased customer himself had a cause of action against the tavern owner.

In *Swanson* and *Pratt* the wife of the intoxicated person was allowed to recover. In those two cases the courts analogized the sale of intoxicating liquor to the sale of a habit-forming drug and relied on cases imposing liability for wrongful sale of drugs. See 3 Restatement, Torts, § 696, p 497 (sale to wife of habit-forming drug). The restatement expressly states that the term "habit-forming drugs" does not include intoxicating liquor; there is a "special note" which mentions that in many states there are statutes prohibiting sale of liquor to addicts or intoxicated persons but there is no discussion in the special note of whether there is liability at common law independently of a statutorily imposed duty. Apparently there will be no modification of the Institute's position in the Restatement, Torts, 2d. See Tentative Draft 14, pp 23, 24.

See, also, *Dunlap* v. *Wagner* (1882), 85 Ind 529.

conduct for which recovery was allowed in the exceptional cases.[25]     GCR 1963, 111.1 requires that a pleading "inform the adverse party of the nature of the cause he is called upon to defend." The deficiencies in the complaint go beyond mere ambiguity or indefiniteness, which can be attacked only by a motion for a more definite statement under GCR 1963, 115.1. *Major v. Schmidt Trucking Company* (1968), 15 Mich App 75, 78. The trial judge's dismissal of Edward Hollerud's claims for alleged violation of the dramshop act and negligence in selling him liquor is, therefore, affirmed.

## II.

The trial judge dismissed Karen Hollerud's claim under the dramshop act for loss of support on the ground that there was no genuine issue of material fact. The defendants admit that Karen Hollerud is a proper party plaintiff under the dramshop act but argue that sales of liquor by the defendants to Edward Hollerud did not cause her any loss of her father's support. The defendants' no-causation argument is postulated on two unrelated facts giving rise to two separate theories.

A. *Karen was in fact supported by Hollerud's sister.* Defendants contend that Karen may not recover because her support needs were met by her father's sister with whom she was living. However, the fact that the child had other means of support, that her support needs were met and she was not allowed to starve, does not preclude her from proving that her right of support from her father was damaged by the defendants.[26]

---

[25] See footnote 28.

[26] *Grant v. Paluch* (1965), 61 Ill App 2d 247 (210 NE2d 35). Compare 45 Am Jur 2d, Intoxicating Liquors, §§ 572, 573, pp 864–868.

B. *Hollerud was injured in an automobile accident shortly before the Indian wrestling contest.* Shortly before the sales by the defendants, Edward Hollerud was injured in an automobile accident. He testified on deposition that he did not seek employment between December 10, 1962, the date of the automobile accident, and 1964 because of pain in his neck, back and shoulder, *i.e.,* because of pain resulting from the automobile accident and not because of the fingers injured in the Indian wrestling contest.

However, Karen claimed that her means of support was permanently injured. Even if the loss of her father's support between 1962 and 1964 was due solely to the automobile accident which preceded the sales of liquor by the defendants there is a further issue concerning her loss of support subsequent to the time in 1964 that her father again began to seek employment. Edward Hollerud testified on deposition that he was a bricklayer. He claimed that even after the cast on his finger was removed, the finger "kept crossing over." He described the motions used by a bricklayer and said that he could not lay brick without the use of this finger: "I am a right-handed bricklayer, trowel in the right and this finger here is the important one". We find nothing in Edward Hollerud's deposition negativing Karen's claim that her right to her father's support was permanently impaired by the defendants.

We also note that the defendants' motions for summary judgment do not assert the absence of a genuine issue of material fact regarding Karen's claim that her means of support was permanently injured. Absent such an assertion duly supported by a proper affidavit (GCR 1963, 117.3), Karen had no obligation to show affirmatively that there is a

genuine issue regarding her claim of permanent injury to her means of support.

The trial judge's ruling dismissing Karen Hollerud's claim is reversed and that claim is remanded for trial.

## III.

The dismissal of Edward Hollerud's claim for assault and battery is also reversed.

The trial judge concluded that Edward Hollerud willingly and knowingly participated in a friendly Indian wrestling match. Although in the ordinary case a plaintiff's consent to an assault and battery is a defense precluding a civil action, if the plaintiff, owing to his state of intoxication, was incapable of expressing a rational will and the defendant had knowledge of this state, the consent was ineffective.[27]

The separate count for assault and battery alleged that Edward Hollerud was in a drunken condition when he entered the Rainbow Bar and that the bartender knew or should have known that he was intoxicated and that Hollerud did not freely and voluntarily enter into the Indian wrestling contest.[28] Hollerud should have been allowed to prove the

---

[27] See 1 Restatement, Torts, § 59, p 111 and 1 Restatement, Torts, 2d, § 59, p 92; 1 Harper and James, Law of Torts, § 3.10, pp 234, 235, fn. 20; Prosser on Torts (3d ed), § 18, pp 103, 104; *cf. Hirdes* v. *Ottawa Circuit Judge* (1914), 180 Mich 321, 325. See, also, cases first cited in footnote 6 and *Galvin* v. *Jennings, supra* fn. 5, p 19.

[28] The reader will observe that in pleading assault and battery Edward Hollerud expressly alleged that he was so far intoxicated that he could not voluntarily enter a hand twisting contest. The specificity of his allegations in this count, in contrast with his failure to have made a like assertion in pleading his count for negligence, is further evidence that he did not intend to attempt to prove the kind of intentional, reckless or grossly negligent conduct for which recovery by or in respect of an intoxicated person was allowed in the exceptional cases cited in footnote 24 and bears out our conclusion stated at the end of part I that the defendants had no reason to believe from what was pleaded that Edward Hollerud intended to offer proofs of such egregious fault under his dramshop act/negligence count.

effect of this alleged intoxication on his mental faculties and the trier of fact should have been allowed to determine whether he was capable of consenting to engage in an Indian wrestling contest. The question of whether the plaintiff was in such an advanced state of intoxication that he was incapable of consenting to the alleged assault and battery presents a genuine issue of material fact.

We note that Hollerud's cause of action for assault and battery does not depend on the previously discussed allegations that the defendants made unlawful sales of liquor to him. If Hollerud was in fact intoxicated when he consented to engage in the Indian wrestling contest, his consent was ineffective without regard to whether he became intoxicated on the premises of the Rainbow Bar or elsewhere.

No issue is raised by the defendants as to whether the owners of the Rainbow Bar are liable for the alleged frolic of their employee.[29]

Reversed and remanded for further proceedings consistent with this opinion. No costs, neither plaintiffs nor defendants having fully prevailed.

All concurred.

---

[29] Cf. *Beilke* v. *Carroll* (1909), 51 Wash 395 (98 P 1119), with *Peter Anderson & Company* v. *Diaz* (1906), 77 Ark 606 (92 SW 861). See, also, *Baker* v. *Golematis, supra* fn. 8.