KOEHLER v DRT SPORTSERVICE, INC.
BEALL v DRT SPORTSERVICE, INC.
HOTTON v DRT SPORTSERVICE, INC.
WICHTMAN v DRT SPORTSERVICE, INC.
SIELOFF v DRT SPORTSERVICE, INC.

1. CONSTITUTIONAL LAW—DUE PROCESS—ACCRUED RIGHT—COMMON LAW—STATUTES.

A right which has accrued, whether given by statute or by common law, may not be taken away without due process of law.

2. STATUTES—CONSTRUCTION—RETROACTIVE APPLICATION—PRESUMPTIONS.

A substantive statute is presumed not to be retroactive, and it will not be applied retroactively unless the language of the statute absolutely requires such application.

3. STATUTES—AMENDMENTS—PROSPECTIVE APPLICATION—LIMITS OF RECOVERY—BURDEN OF PROOF.

A statutory amendment is to be given prospective effect where it contains both a change in the monetary limits of recovery and imposes a higher burden of proof.

4. INTOXICATING LIQUORS—DRAMSHOP ACT—AMENDMENTS—PROSPECTIVE APPLICATION—NAME AND RETAIN PROVISION—LIMITS OF RECOVERY—BURDEN OF PROOF—ACCRUED RIGHT.

An amendment to the dramshop act providing that no action against a retailer or wholesaler shall be commenced unless the alleged intoxicated person is named and retained as a defendant, containing a change in the monetary limits of recovery, and imposing a higher burden of proof, is to be given prospective effect; it applies only to the wrongful furnishing of intoxicants occuring after June 29, 1972, and does not apply to claims for damages against dramshop owners accruing prior to

REFERENCES FOR POINTS IN HEADNOTES
[1] 16 Am Jur 2d, Constitutional Law § 542 *et seq.*
[2] 73 Am Jur 2d, Statutes § 347 *et seq.*
[3, 4] 73 Am Jur 2d, Statutes § 342 *et seq.*

such date even though the dates of trials are subsequent thereto (MCLA 436.22).

Appeal from Wayne, George T. Martin, J. Submitted Division 1 June 13, 1974, at Detroit. (Docket Nos. 16601, 16881–16883, 18600.) Decided September 24, 1974. Leave to appeal denied, 393 Mich —.

Complaints by Kenneth Koehler, Louis M. Beall, for himself and as executor of the estate of Margaret M. Beall, deceased, Elizabeth Ann Hotton, Clayton G. Wichtman, and Barbara W. Wichtman, against DRT Sportservice, Inc., Dearborn Townehouse, Inc., and Sol Milan and John Bidwell, doing business as La Chambre; and complaint by Dorothy Sieloff and Kenneth A. Sieloff against the same defendants and against Charles R. Belton, administrator of the estate of Harry D. Rutherford, deceased, for damages arising out of an automobile accident. Summary judgments for defendants. Plaintiffs appeal. Cases consolidated for appeal. Reversed and remanded for trial.

*Kelman, Loria, Downing & Schneider,* for plaintiffs.

*Plunkett, Cooney, Rutt & Peacock* (by *Charles T. McGorisk* and *John P. Jacobs),* for defendant DRT Sportservice, Inc.

*Finch & Finch,* for defendant Dearborn Townehouse, Inc.

*Baun & Van Tiem (D. James Barton,* of counsel), for defendants John Bidwell and Sol Milan.

Before: J. H. GILLIS, P. J., and ALLEN and ELLIOTT,* JJ.

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

Allen, J. Five separate cases arising out of a single automobile accident are consolidated in this appeal. Each suit was filed against three named tavern establishments under the dramshop act, MCLA 436.22; MSA 18.993, and all were heard by the same trial judge who in each case granted defendant tavern operators' motion for summary judgment.

Succinctly stated, the facts alleged in the respective bills of complaint and as they appear in the settled record on appeal, are as follows: On the evening of July 16, 1971, Harry D. Rutherford visited the DRT Sportservice, Inc., establishment where he consumed quantities of intoxicating liquors and was sold further spirits after he became intoxicated. He then visited La Chambre, operated by defendants Bidwell and Milan, and the Side Door premises operated by defendant Dearborn Townehouse, Inc., where he purchased further alcoholic beverages even though intoxicated to the point that his ability to operate a motor vehicle had become seriously impaired. He then proceeded to drive his automobile out onto Interstate Highway 75 in the wrong direction where he collided with a vehicle occupied by five young people. Four of the five young adults were killed—Louis M. Beall, Jr., age 22; Elizabeth A. Hotton, age 19; Gary C. Wichtman, age 20; and Kenneth Sieloff, age 21. The fifth occupant, Kenneth Koehler, age 19, survived but became a paraplegic. In addition, Margaret M. Beall, mother of Louis M. Beall, Jr., committed suicide, allegedly as a result of grief from her son's death. Also killed in the accident was Harry D. Rutherford.

The Koehler case was filed June 30, 1972, one day after the dramshop act was amended as hereinafter recited. Subsequent to the accident but prior to June 30, 1972, Koehler entered into an

agreement to settle his cause of action against the estate of Harry D. Rutherford, for $10,000, but the agreement was not formally executed until July 5, 1972.[1] The Beall, Hotton and Wichtman cases were all filed February 7, 1973, and, prior to filing suit, final settlement for $1,250 each was signed with the estate of Harry D. Rutherford. All settlements were approved by the probate court for Oakland County, August 16, 1972. The fifth and last case, Sieloff, was commenced March 7, 1973, but no settlement has ever been made with the estate of Harry D. Rutherford and no releases have been signed.

In each case, defendants moved for summary judgment in their favor on the grounds that at the time of filing suit, plaintiffs had not complied with the June 29, 1972 amendment to the dramshop act providing as follows:

*"No action against a retailer and wholesaler or anyone covered by this act or his surety, shall be commenced unless the minor or the alleged intoxicated person is a named defendant in the action and is retained in the action until the litigation is concluded by trial or settlement."* 1972 PA 196.

Defendants also argue that the respective releases and settlements with the estate of Harry D. Rutherford were formally signed after the effective date of the amendment. Defendants' motion for summary judgment was first considered by the trial court in the Koehler case where, in a carefully written opinion dated January 24, 1974, defend-

---

[1] The settled record of appeal in Koehler states that "subsequent to the settlement agreement, the dramshop act was amended" but gives no date for the settlement agreement. Defendants' briefs allege that the covenant not to sue was not formally signed until July 5, 1972. Apparently, agreement between the parties was reached prior to the dramshop amendment but was not reduced to writing until six days after the amendment.

ants' motion was granted. The court held that the remedy provided under the dramshop act was purely statutory; that the June 29, 1972 "name and retain" provision was procedural and, under *Cichecki v Hamtramck,* 382 Mich 428; 170 NW2d 58 (1969), and cases cited therein, no vested right exists to maintain a statutory procedural law and therefore the failure of defendants to join the estate of Harry D. Rutherford as a defendant was noncompliance with the statute.

On appeal before us, plaintiffs raise a number of issues footnoted below.[2] We find it necessary to discuss only one, namely, whether the trial court was in error in holding that the amendment of June 29, 1972, was procedural and did not divest plaintiffs of a vested right. As to this issue, the factual situations differ among the five consolidated cases. In Koehler, the covenant not to sue was made prior to the amendment. In Wichtman, Beall and Hotton, the releases were signed six days, four weeks, and six weeks, respectively, after the amendment. In Sieloff, no releases have been given at all. It will be helpful to first observe that

---

[2] a. The amendment is unconstitutional in that it is a usurpation by the Legislature of the Supreme Court's rule-making power concerning rules of practice and procedure.

b. The amendment violates the equal protection of the laws provision of both the State and Federal Constitutions. US Const, Am XIV; Const 1963, art 1, § 2.

c. The amendment violates the due process of law provision of both the State and Federal Constitutions. US Const, Am XIV; Const 1963, art 1, § 17.

d. Properly construed, the amendment does not require joining the *person* of the alleged intoxicated driver if (a) the intoxicated driver is killed in the accident and therefore unavailable, or (b) if a settlement has been made with the estate of the alleged intoxicated person. (This argument made only in the Koehler case and was not contained in appellants' briefs in the remaining cases.)

e. The amendment is not procedural but substantive and may not divest plaintiffs of a right which accrued before the date of the amendment, but only may be applied in cases involving injury after June 29, 1972.

joinder of a party to whom a release has already been made and who must under the statute be "retained in the action until the litigation is concluded by trial or settlement" is a practical impossibility. Even if plaintiffs were to join the estate of the alleged intoxicated driver, a motion to dismiss could be granted on the grounds that prior releases had been given. It is for this obvious reason that plaintiffs argue that in the four cases where releases have been signed, the provision, which in this opinion we refer to as the "name and retain" provision, works to divest plaintiffs of a substantive right. Defendants, whose position was adopted by the trial court, argue that the "name and retain" provision of the amendment is procedural only. Defendants further argue that in Sieloff no release has been given and that in four cases the releases were signed after the effective date of the amendment and thus, in effect, it was not the statute but plaintiffs' action which created the legal impossibility of joinder. Because of the differences in dates of the releases we, separately by cases, will discuss the issue involved. The "name and retain" provision is only a portion of the amendatory act. As will appear later in this opinion, 1972 PA 196 also deals with damages and the burden of proof.

### 1. *Kenneth Koehler v DRT Sportservice, Inc.*

Dramshop actions are statutory creations and a departure from common law. 15 Michigan Law & Practice, Liquor, § 61, p 543. If not exclusively statutory, recovery is at least primarily statutory. *Hollerud v Malamis,* 20 Mich App 748, 754; 174 NW2d 626 (1969). Where a procedural amendment is made to remedial legislation the amendment is presumed to be retrospective and will apply to suits commenced after the date of the statute even

though the tort or injury was incurred prior to the amendment.

"[T]he statutes or amendments pertaining to procedure are generally held to operate retrospectively, where the statute or amendment does not contain language clearly showing a contrary intention. Indeed, in the absence of any savings clause, a new law changing a rule of practice is generally regarded as applicable to all cases then pending. * * * No vested right can exist to keep statutory procedural law unchanged and free from amendment." *Hansen-Snyder Co v General Motors Corp,* 371 Mich 480, 485; 124 NW2d 286 (1963).

This line of authority also appears in *Cichecki v Hamtramck,* 382 Mich 428, 436; 170 NW2d 58 (1969), *Lahti v Fosterling,* 357 Mich 578, 589; 99 NW2d 490 (1959), and *Bejger v Zawadzki,* 252 Mich 14; 232 NW 746 (1930), and is the authority upon which the trial court relied in its opinion.

Reaching a contrary result are decisions cited by plaintiffs, holding that where a right has accrued, even though it is by statute rather than under common law, it may not be taken away without due process of law.

" 'All authorities agree that the repeal of a statute does not take away the plaintiff's cause of action under it for damages for an injury to person or property. They rest on the sound doctrine, expressed in *Menges v Dentler,* 33 Pa 495 (75 Am Dec 616) [1859], * * * that the law of the case at that time when it became complete is an inherent element in it; and, if changed or annulled, the law is annulled, justice denied, and the due course of law is violated.'

"The above case is cited to the text of 25 RCL 938.

" 'The repeal of a statute does not take away a right of action for damages which have already accrued'." *Minty v Board of State Auditors,* 336 Mich 370, 390; 58 NW2d 106 (1953).

See also *Cusick v Feldpausch,* 259 Mich 349, 353; 243 NW 226 (1932), and *Campbell v Detroit,* 51 Mich App 34, 37–38; 214 NW2d 337 (1973). In our opinion, Koehler clearly falls within the latter line of cited cases. Superficially, the "name and retain" requirement appears to be only procedural. Pragmatically, in situations where a release has been agreed upon, the amendment destroys a right which existed previously. Where, as in Koehler, the release agreement *precedes* the amendatory act, plaintiff is clearly divested of a right of action without due process of law. The situation is similar to *Cusick, supra,* where plaintiff, a guest passenger of defendant driver, was injured February 3, 1929. The guest passenger statute was amended March 27, 1929, to bar recovery unless the accident was caused by gross negligence or willful and wanton misconduct. Suit was filed in November 1929, plaintiff contending that the law on the date of the accident applied. Defendant asserted that the amendment was only a change in remedy and procedure. The court held for plaintiff, saying:

"The effect of the change, if given retrospective effect, would be to deprive plaintiff and others similarly situated of a right of action. This court has recognized that a common-law right of action is property and entitled to protection. *Dunlap v Toledo, A A & G T R Co,* 50 Mich 470; 15 NW 555 (1883); *Devlin v Morse,* 254 Mich 113; 235 NW 812 (1931). By the weight of authority, a statutory right of action for damage to person or property, which has accrued, is a vested right and likewise to be protected.

"The rule is otherwise in respect of remedy, of mere penalties, of procedure, and of rights merely inchoate or expectant." 259 Mich 349, 353–354.

In *Campbell v Detroit, supra,* a decision rendered by this Court after briefs were submitted in

the cases now before us, plaintiff sued for injuries sustained in a fall on a defective sidewalk. The fall occurred in July 1969 but suit was not commenced until July 1972. At the time of the accident, suit was permitted against the city because the applicable immunity statute, 1964 PA 170, § 7, was unconstitutional. This statute was amended August 1, 1970 by 1970 PA 155 (MCLA 691.1401 *et seq.;* MSA 3.996[101] *et seq.),* and, if applied retroactively, would have nullified plaintiff's cause of action. The Court held that the date of injury was controlling, saying:

"Tort actions accrue at the time when all elements of a cause of action have occurred and can be alleged in a proper complaint. *Connelly v Paul Ruddy's Co,* 388 Mich 146; 200 NW2d 70 (1972). Plaintiff's action thus accrued before the later statute was effective and any effect that the statute could have upon it must be measured by the requirements of equal protection and due process. * * *

"Although the present facts involve the reenactment of a statute rather than a repeal, the *Minty* case is persuasive. Invalidating the plaintiff's present cause of action would also abrogate vested rights by a change in substantive law. Such is not permissible under the limitations of due process and equal protection. The date of the injury is therefore controlling and 1970 PA 155, § 7 cannot be raised to defeat the present cause of action." 51 Mich App 34, 37–39.

Defendants attempt to distinguish *Cusick, supra,* and *Minty, supra,* on the grounds that in those cases the subsequent legislation was truly substantive, having the effect of directly depriving plaintiffs of their cause of action, whereas in the present cases the cause of action against the dramshop operators is not taken away, and plaintiffs' inability to proceed is due only to plaintiffs' failure to comply with a procedural amendment. We do not

agree with this distinction. The law in effect at the time of the injury did not require "naming and retaining" and allowed separate settlements with the alleged intoxicated driver or his estate. Indeed, this was the then common practice. Koehler's counsel proceeded to act accordingly and, as stated in the settled record, made a settlement agreement *before* the date of the amendatory legislation. The effect of the amendment is to deprive plaintiff Koehler of a right which existed prior to the amendment. Whether the act is procedural or substantive, the fact remains that plaintiff will have no other effective remedy against the tavern establishments if retroactive application is given the joinder amendment. The amendment is just as effective a deprivation of Koehler's right as though the entire right of recovery had been taken away. This is a far different result than the situation in the cases cited by the trial court. In *Cichecki, supra,* the amendatory act increased rather than decreased the employee's right to recovery. In *Lahti, supra,* the amendatory statute restored a common-law right which had previously been removed by a statute. In *Bejger, supra,* the repeal of the dog-bite statute which was in effect at the time of the injury still left plaintiff with a common-law right of recovery.

2. *Louis M. Beall v DRT Sportservice, Inc.*
   *Elizabeth Ann Hotton, v DRT Sportservice, Inc.*
   *Clayton and Barbara Wichtman v DRT Sportservice, Inc.*

Our conclusion in Koehler would be conclusive in these appeals but for the point made by defendants that in these cases, releases were both agreed upon and signed after the effective date of the

amendment.[3] The time lag between the effective date of the statute and the signing of the agreement is approximately four weeks, six weeks and six days, respectively.[4] We note that the amendment seriously changes plaintiffs' rights in two respects other than naming and retaining. The word "visibly" was inserted preceding "intoxicated". As amended, liability attaches only if the bar patron when served is visibly intoxicated. The words "actual damages" are substituted for "actual and exemplary damages", thus reducing the damages potentially recoverable by plaintiffs.[5] The combined effect of the two changes, each being in addition to the "name and retain" requirement, is a major substantive change in plaintiffs' cause of action under the statute at the time of the injury. Obviously plaintiffs' burden of proof, at least against a tavern establishment which first served

[3]

| Case | Agreement Signed | Approved By Probate Court |
|---|---|---|
| Louis M. Beall, et al | Aug. 2, 1972 | Aug. 16, 1972 |
| Elizabeth Ann Hotton | Aug. 14, 1972 | Aug. 16, 1972 |
| Clayton & Barbara Wichtman | July 5, 1972 | Aug. 16, 1972 |

[4] Due process would require some reasonable notice to plaintiffs or their counsel. The publishers of Michigan Statutes Annotated inform us they first published the amended statute July 31, 1972, and no reference to the amendment was contained in the June 19 or July 10 supplements. Publishers of Michigan Compiled Laws Annotated state they first published and mailed the amendment August 23. A few additional days would be required for receipt thereof by members of the bar. Accordingly, we doubt that plaintiffs' counsel were aware of the amendment until sometime after August 14. However, we do not base our decision on this somewhat speculative point.

[5] The amendment also added the words "and the sale is proven to be a proximate cause of the injury or death", and apparently the bar owner is entitled to assert all of the factual defenses available to the "allegedly intoxicated person". While SJI 27.00, p 4, noted that 1972 PA 196 "added the express requirement" of proof regarding proximate cause, this change does not necessarily impose an added element of proof since our Court has held that under the dramshop act, plaintiff must establish "there is a causal connection between the unlawful sale and the injuries". *Durbin v K-K-M Corp,* 54 Mich App 38, 58; 220 NW2d 110, 121 (1974).

the deceased driver, is rendered more difficult. For this reason it makes no difference that the releases were signed after the effective date of the amendment and are—as claimed by defendants—to be attributable to the action of the plaintiffs rather than to the joinder provision itself.

Where a dramshop act amendment reducing the amount of damages is enacted after the alleged illegal sale occurred but prior to trial, the courts have split on whether the amendment is to be applied retroactively.[6] But where a single amendment both contains a change in the monetary limits of recovery and imposes a higher burden of proof, then the court does not hesitate in holding the statute is to be given prospective effect. Such a case is *Smith v Clackamas County*, 252 Or 230; 448 P2d 512 (1968). Plaintiff sued defendant county for damages caused by defective roads. At the time of the accident, counties were strictly liable, without proof of negligence, for damages caused by defective roads and recovery was limited to $2,000. Prior to plaintiff's filing suit but after the accident occurred, the statute was amended to require proof of negligence and the limits of liability were raised to $10,000. Plaintiff claimed the statute was retroactive and that she was entitled to recovery up to $10,000. Defendant county contended the old statute governed. The court found plaintiff should have been required to plead under the old statute, saying:

"Numerous wrongful-death cases hold that when the limits of recovery are changed by legislation, any cause

[6] Holding that the statute should not be given retroactive effect are *Zucker v Vogt*, 200 F Supp 340 (D Conn, 1961), and *Lavieri v Ulysses*, 149 Conn 396; 180 A2d 632 (1962). Holding that retroactive effect should be accorded are *Lichter v Scher*, 11 Ill App 2d 441; 138 NE2d 66 (1956) and *Flores v Jack Spot Inn, Inc*, 17 Ill App 2d 1; 149 NE2d 498 (1958). See 98 ALR2d 1113 for analysis of these cases.

of action existing prior to the change in the law is governed by the old limit of recovery. See *Wiebe v Seely, Administrator,* 215 Or 331; 335 P2d 379 (1959), and cases elsewhere collected in the Annotation, 98 ALR2d 1105, 1110-1113 (1964). We believe the limits of recovery in the case at bar to be analogous to the limits in wrongful-death cases.

"In the present case, moreover, the increase in the amount of damages recoverable was not the important substantive change in the statute. The purpose of the amendment was to change the basis of recovery from strict liability to liability based on negligence. The increase in the limits of recovery was an incidental change. * * *

"The plaintiff relies upon *Spicer v Benefit Assn of Ry Emp,* 142 Or 574; 17 P2d 1107; 21 P2d 187; 90 ALR 517 (1933); for the proposition that Section 3 of the amending act was intended to make the act retroactive in this case. * * * However, the statute involved in that case was a procedural statute, while the present statute makes important changes in substantive rights. Procedural statutes are presumed to apply to all actions accrued or pending. 2 Sutherland, Statutory Construction § 2212 (3d ed 1943). Without the statutory language quoted in the *Spicer* case, the statute in that case would have applied to all rights accrued whether in litigation or yet to be litigated. In the present case, with a substantive statute before us, the rules of construction require the converse of the rule used in the *Spicer* case. *A substantive statute is presumed not to be retroactive, and such a statute will not be applied retroactively unless the language of the statute absolutely requires such application.* The *Spicer* case, accordingly, must be considered as limited to procedural statutes. 252 Or 230, 233–235; 448 P2d 512, 514." (Emphasis supplied.)

In view of the substantive changes made in the amendment we conclude the Sieloff cause of action is governed by the decisions in *Cusick, supra; Minty, supra; Campbell, supra;* and *Smith, supra.*

Further, we find nothing in the amendment which suggests that the Legislature intended the

new rules of proof and damages to apply to sales occurring prior to the amendment.

"The general rule is that a statute is to be construed as having a prospective operation only, unless its terms show clearly a legislative intention that its terms should operate retrospectively." *Angell v West Bay City,* 117 Mich 685, 688; 76 NW 128 (1898).

"The amendment here in question may not be regarded as wholly procedural in character, as defendant contends. Obviously its effect, if so applied under the facts before us in this case, would result in taking from the plaintiff a right which the statute, in force at the time of his injury, granted to him. There is nothing in the amendment in question here indicating that the legislature intended any such possible result. In other words, there is nothing to overcome the presumption that prospective operation only was intended." *Tarnow v Railway Express Agency,* 331 Mich 558, 565–566; 50 NW2d 318 (1951).

The name and retain provision and the provisions limiting damages and requiring proof of visible intoxication are all part of a single amendment. Obviously, the Legislature did not intend to make part of the amendment ("name and retain") retroactive and the balance prospective. Accordingly, we interpret that part of the amendment which reads "No action against a retailer or wholesaler * * * shall be commenced unless" joinder is made, to, in effect, read that no action against a retailer or wholesaler *for sales occurring after the effective date of this act* shall be commenced unless joinder is made.

3. *Dorothy and Kenneth Sieloff v DRT Sportservice, Inc.*

In this case, releases have not been executed relieving the estate of Harry D. Rutherford from liability. Consequently, plaintiffs are in no way

prejudiced by the joinder provision. The Rutherford estate could easily be added as a party defendant. However, to do so would either require giving retroactive effect to the entire amendment, including the visibly intoxicated and restricted damage provisions, or would require us to construe the amendment to find that the joinder provisions were retroactive but the damages and visibly intoxicated proof provisions were prospective. The first interpretation would impair plaintiff rights already vested in Sieloff and, for the reasons set forth in the discussion of *Beall, Hotton and Wichtman, supra,* would deprive plaintiffs of due process. The second interpretation would lead to the absurd result that Sieloff could proceed with his cause of action against the three liquor establishment operators but other plaintiffs could not recover. Thus, the Sieloff appeal is, in itself, an excellent illustration of the inequitable consequences which would result unless the amendment in its entirety is found to apply to suits commenced for wrongful sales occurring after June 29, 1972. The Legislature did not intend that in cases arising out of the same wrongful furnishing of intoxicants, all culminating in a common accident, some of the parties injured could recover but others could not. Therefore, we conclude that the trial court was in error and that, in this case, as in the four cases previously discussed, the orders of summary judgment should be set aside and the case remanded for trial.

Our disposition of the five consolidated cases and decision that the amendatory act applies only to wrongful furnishing of intoxicants occurring after June 29, 1972, makes it unnecessary to decide the constitutional issues and related claims of error raised by plaintiffs in this appeal. We specifically

express no opinion on the constitutionality of 1972 PA 196, and leave this task for future panels. The orders of summary judgment in favor of defendants and of no cause for action in favor of defendants in all of the five cases in this consolidated appeal are set aside and all cases remanded for trial consonant with this opinion.

Reversed, costs to plaintiffs.

All concurred.